Randolph M. RENSI, Plaintiff,

v.

David L. LANGSTON, Defendant,

v.

INSURANCE COMPANY OF NORTH AMERICA, Garnishee and Third–Party Plaintiff,

v.

GROVE CITY COLLEGE, Third–Party Defendant.

Misc. No. 6851.

United States District Court, W. D. Pennsylvania.

Feb. 26, 1980.

Russell J. Ober, Jr., Pittsburgh, Pa., for plaintiff Rensi.

Jerome W. Kiger, Pittsburgh, Pa., for garnishee Insurance Company of North America.

Allen T. Lane, Pittsburgh, Pa., for third–party defendant Grove City College.

## MEMORANDUM

MARSH, District Judge.

The Plaintiff, Randolph M. Rensi (Rensi), and the Defendant, David L. Langston (Langston), were 18–year old students at Grove City College, Grove City, Pennsylvania on December 7, 1974. While engaged as participants in preparation for a theatrical production sponsored by the College, Rensi was severely burned when an explosion was activated by Langston.

On December 3, 1976 Rensi entered into an agreement of settlement with Grove City College and received $3,750. He executed a "Release [Joint Tort–Release of One Joint Tortfeasor]." [1]

On the same day, Rensi, a citizen of Pennsylvania, brought a diversity civil action against Langston, a citizen of New York, alleging that on December 7, 1974 Langston negligently activated the explosive device which caused the injuries to Rensi.

A summons and complaint were served upon Langston on December 10, 1976 at Civil Action No. 76–1514.

A default judgment was entered against Langston when he failed to appear and answer. A jury trial was held on the issue of damages, and a verdict was entered in favor of Rensi in the sum of $22,000. On May 24, 1977 a judgment was entered in favor of Rensi and against Langston for $22,000 and costs.

Langston was an insured person under a homeowner's insurance policy No. HCA 746272 issued by the Insurance Company of North America (INA) to Langston's mother and stepfather, Mr. and Mrs. Alexander Burgess, who resided in their home in Boston, New York.

Notice of the accident at Grove City College was not given to INA until July 19, 1977, a period of about 19 months after the occurrence. The policy provided that notice of an occurrence be given "as soon as practicable." Because of the late notice, INA refused to defend Langston.

On August 2, 1977, Plaintiff Rensi issued a Writ of Execution which was served upon INA as Garnishee of the Defendant Langston. Interrogatories served on the Garnishee were answered and new matter was

---

1. The Release is set forth in the Appendix hereto attached.

set forth. A jury trial was demanded by Garnishee.

On August 24, 1979 the Garnishee's Motion to bring in as a third–party defendant Grove City College was granted, and it was ordered that the third–party summons and complaint be served upon the Third–Party Defendant, Grove City College, together with a copy of the court order. Grove City College filed an answer on October 12, 1979.

Rensi contended that the law of Pennsylvania should govern the trial. INA contended that the law of New York should govern. After an evidentiary hearing and argument on December 5, 1979, the court found facts and concluded that the law of New York should govern the issue of liability of INA to Rensi for payment of the judgment of $22,000 entered in Rensi's favor and against Langston, the insured. *Cf. Nelson v. Insurance Company of North America*, 264 F.Supp. 501 (D.C.N.J.1967).

A jury trial was scheduled for December 13, 1979.

On December 11, 1979 INA, the Garnishee, filed a Motion for Summary Judgment, relying on *Safeguard Insurance Company v. Baldauf*, 20 Misc.2d 667, 188 N.Y. S.2d 762 (1959). On December 12, 1979 Grove City College, the Third–Party Defendant, filed a similar motion.

At a conference on December 13, 1979, the jury trial scheduled for that date was continued and an evidentiary hearing on the aforesaid Motions for Summary Judgment was scheduled for January 17, 1980, said hearing to be conducted pursuant to the provisions of Rule 56, Fed.R.Civ.P.

On January 2, 1980 the Plaintiff Rensi filed a Cross Motion for Summary Judgment.

At the hearing on January 17, 1980, the Plaintiff Rensi submitted two affidavits and the deposition of Defendant Langston. The Garnishee INA submitted references to Langston's deposition; the deposition of Mary Margaret Suhay, an underwriter for INA; certain pages in the deposition of Peter J. Welsh, a claims representative of INA; a letter from INA to Mr. and Mrs. Alexander Burgess dated November 10, 1976; and the "Release [Joint Tort–Release of One Tortfeasor]" executed by Rensi whereby in consideration of the payment of $3,750 by Grove City College he released Grove City College from all claims "resulting from . . . an occurrence which happened on the 7th day of December, 1974, at . . . Grove City College . . . ." The Release was dated December 3, 1976.

At the hearing a "Stipulation of Facts" agreed to by counsel for each of the parties was filed.[2] The affidavits, depositions, and exhibits above mentioned were admitted into evidence.

It is our opinion that summary judgment should be entered in favor of Grove City College, but the Motion for Summary Judgment in favor of INA and the Cross Motion for Summary Judgment in favor of Rensi should be denied.

It is also our opinion that pursuant to the Release given by Rensi to Grove City College, the judgment in Rensi's favor of $22,000 should be reduced to $11,000 plus costs and interest from May 24, 1977.

■ In a motion for summary judgment, all doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *First Pa. B. & T. Co. v. United States Life Ins. Co.*, 421 F.2d 959, 962 (3d Cir. 1969). The burden is upon the party moving for summary judgment to demonstrate that no genuine issue as to any material fact exists and that said party is entitled to judgment as a matter of law. As stated in 6 Moore's Federal Practice, § 56.15[3], at 56–463 to 467:

> "The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which under applicable principles of substantive law entitled him to judgment as a matter of law.

---

2. The Stipulation of Facts is set forth in the Appendix hereto attached.

"The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact."

Cross motions do not preclude the existence of genuine factual issues. § 56.-13, *supra*.

Judge Maris in *Toebelman v. Missouri–Kansas Pipe Line Co.*, 130 F.2d 1016, 1018 (3d Cir. 1942), stated:

"Upon a motion for a summary judgment it is no part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried. . . . All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment. *Weisser v. Murson Shoe Corporation*, 2d Cir. 1942, 127 F.2d 344."

Under applicable New York law, the insureds are relieved of their obligation to give notice "as soon as practicable" if they offer a reasonable excuse for such failure. Whether or not delay in giving notice to the insurer of a homeowner's policy was reasonable, and whether or not there were mitigating circumstances is ordinarily a question of fact for the jury. *875 Forest Ave. Corp. v. Aetna Casualty and Sur. Co.*, 322 N.Y.S.2d 53 (1971); *Security M. Ins. Co. of N. Y. v. Acker–Fitzsimons Corp.*, 31 N.Y.2d 436, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972); *Greater New York Mutual Insurance Co. v. Powers*, 25 Misc.2d 393, 206 N.Y.S.2d 728 (1960); *Rushing v. Commercial Casualty Ins. Co.*, 251 N.Y. 302, 167 N.E. 450 (1929). *See also Renuart–Bailey–C. L. & S. Co. v. Phoenix of Hartford Ins. Co.*, 474 F.2d 555 (5th Cir. 1973); *MFA Mut. Ins. Co. v. Clark*, 79 F.R.D. 227 (E.D.Tenn. 1978).

In *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 416 N.Y.S.2d 559, 389 N.E.2d 1080 (1979), it was stated:

"It is well settled that the phrase 'as soon as practicable' is an elastic one, not to be defined in a vacuum. By no means does it connote an ironbound requirement that notice be 'immediate' or even 'prompt', relative as even those concepts often are; 'soon', a term close to each of these in common parlance, is expressly qualified in the policy here by the word 'practicable'. Nor was compliance with the insurance policy's temporal requirement to be measured simply by how long it was before written notification came forth. More crucial was the reason it took the time it did. So, the provision that notice be given 'as soon as practicable' called for a determination of what was within a reasonable time in the light of the facts and circumstances of the case at hand. (*Deso v. London & Lancashire Ins. Co. of Amer.*, 3 N.Y.2d 127, 129, 164 N.Y.S.2d 689, 690, 143 N.E.2d 889, 890; *State Farm Mut. Auto. Ins. Co. v. Bush*, 46 A.D.2d 958, 362 N.Y.S.2d 220.)

"Of course, there is no inflexible test of reasonableness. As with most questions whose answers are heavily dependent on the factual contexts in which they arise, rules of general application are hard to come by (*see, e. g., Chinn. v. Butchers' Mut. Cas. Co. of N. Y.*, 190 Misc. 117, 71 N.Y.S.2d 70 [failure to foresee that an insurance claim would eventuate]; *Melcher v. Ocean Acc. & Guar. Corp.*, 226 N.Y. 51, 123 N.E. 81 [failure to foresee that an insurance claim would eventuate]; . . ."

In *Mighty Midgets*, it was held that the "unsophisticated" insured, a 21–year old executive "whose limited personal and vocational backgrounds were totally alien to either the world of insurance or that of law," without "previous experience in the processing of a liability claim," was entitled to a trial, and to hold that the "Midgets' delay in providing written notice (to the insurer) was unreasonable as a matter of law is untenable."

It appears from Langston's deposition (pp. 4–6, 17–18) that he knew he had injured Rensi by activating an electric switch which caused an explosion. It also appears that Langston was aware that his parents had a homeowner's insurance policy (*id.* pp. 19, 33). However, it is not certain that he

knew he was covered for an accident that occurred at Grove City College (*id.* p. 33). He told his parents, the named insureds, about the accident (*id.* pp. 24–25). In October 1976, his stepfather, Mr. Burgess, told INA investigator Peter J. Welsh that he learned of the accident when Langston came home for Christmas vacation in December 1974. (Welsh deposition p. 9). He told Mr. Welsh that an accident report was not submitted "sooner" because he felt that the College was going to take care of the matter (*id.* pp. 55–56).

About two weeks after the accident, Langston was interviewed by an investigator for Grove City College (Langston deposition, *id.* pp. 18–20). He said the possibility of his being sued was "very vague" (*id.* p. 20). Nevertheless, he asked the investigator what was going to happen if "suit comes against me and as I recall it, he said that I would be covered by the college insurance company" (*id.* p. 18). Later in May 1975, he spoke to Dr. Penar, a dean or vice-president in charge of financial affairs, "because it was a concern." Dr. Penar told him that as far as he knew "I would be covered by the college. Then if the college insurance company wanted to come after me, you know ... but it would have to be the college insurance company that would have to pursue that issue" (*id.* p. 18).

Langston also spoke several times with the President of the College, Dr. McKenzie, who in 1976 informed him that the College's insurance company had settled with Rensi (*id.* pp. 29–30).

Rensi testified in his deposition (Rensi deposition pp. 48–49) that Langston told him in the hospital that it appeared that "the college would take care of everything," and later (the time not being specified) Langston "mentioned that if I had any problems to let him know, he had personally had insurance also."

In December 1975, Langston was interviewed by an investigator whom he knew was representing Rensi. This worried him

slightly that Rensi might sue him (Langston deposition pp. 20–22). However, in his recollection, the investigator did not mention the possibility of suing him (*id.* p. 28).

The investigator, Charles W. Harrison, in his affidavit filed January 10, 1980, stated that he was hired by Rensi's lawyers to conduct an investigation of the accident; that he interviewed Langston on December 10, 1975 [3] and told him he was hired by Rensi's attorneys to determine whether Rensi had a claim against Grove City College; that at no time did he advise Langston or suggest to him that he might be personally responsible for the injuries and damages sustained by Rensi.

In addition, Rensi, in his affidavit filed January 10, 1980, stated that subsequent to the accident he spoke with Langston, but at no time said anything to him that would imply that he considered Langston liable for the injuries Rensi had sustained.

However, it does not appear in evidence that Rensi or his lawyers, or their investigator, Harrison, ever inquired of Langston, or his parents, the identity of their insurance company. It is certain Rensi never notified INA of the accident.

Langston did not take steps to notify his parents' insurance company, INA, in December 1974 because he was under the impression "that the school would back me if any suit did come against them" (Langston deposition pp. 22–23). Neither did he discuss giving notice to the insurance company with his parents during 1975 through July 1976, because he thought the College was covering him (*id.* pp. 22, 24–25, 33–34).

As soon as Langston was notified that Rensi contemplated suit against him, his mother promptly notified the Peirce & Cash Inc. Agency, authorized agents for INA, on July 19, 1976 (see Stipulation of Facts, paragraphs 14–15).

It seems evident that Langston was not too much concerned about being sued. He stated: "Well, since my financial status is

---

**3.** Langston recalled the interview with Harrison to be in the spring of 1975 (Langston deposition pp. 6, 21).

nil, I guess we decided that if judgment came or however it works, that it would come and then I would enter a plea in bankruptcy or whatever it is" (*id.* p. 32). He did not have the money to pay his personal lawyer, nor to travel to and from Pittsburgh to defend the suit brought by Rensi (*id.* p. 33).

And, of course, Mr. and Mrs. Burgess were not concerned, for neither could possibly be liable personally for Rensi's injuries which resulted from Langston's negligence at the College.

■ Thus, a jury could find from the evidence that the unsophisticated 18–year old Langston, whose background was totally alien to the worlds of insurance or law, and his parents, who had not committed any tort, acted as reasonable and prudent persons in the circumstances. Although the parents knew of the accident in December 1974, they were informed and believed that their boy was not liable for the Rensi injuries which occurred at Grove City College, Pennsylvania, because responsible representatives of the College had informed him that the College's insurance company was going to take care of the damages. A jury could find the failure of Langston and his parents, the named insureds, to notify INA for 19 months was reasonable in the circumstances.

On the other hand, a jury could find from the evidence and circumstances that Langston and his parents did not act as reasonable and prudent persons in failing to notify INA of the accident for 19 months. All three knew of the accident in December 1974. They knew they were insured by a homeowner's insurance policy issued by INA. A jury could find that the parents, as named insureds, unreasonably failed to notify INA, even though their son, Langston, told them the College was going to take care of the Rensi damages. Also, a jury could find that Langston, who knew of the existence of the policy and who knew he was insured, unreasonably failed to notify INA, notwithstanding that he was informed and believed that the College would cover him for the Rensi damages.

## MOTION OF THIRD–PARTY DEFENDANT, GROVE CITY COLLEGE, FOR SUMMARY JUDGMENT

In a Motion in Limine filed by Rensi on December 10, 1979, he alleged that the garnishee is limited to raising defenses of immunity, exemption of property, and any defense which could have been asserted against the judgment debtor, Langston, but that the garnishee could not relitigate the issue of the liability between the Plaintiff Rensi and the Defendant Langston after the default judgment was entered in favor of Rensi and against Langston. The court agreed, and by order filed December 18, 1979 the motion was granted "and the Garnishee and Third–Party Plaintiff is directed to refrain from attempting to introduce evidence at the trial of the above–captioned case relating to the liability of original Defendant David L. Langston or Third–Party Defendant Grove City College, or any other person, and such evidence is found to be inadmissible for the reasons set forth in Plaintiff's Motion in Limine."

■ In addition, without being sued, Grove City College settled with Rensi on December 3, 1976 and was released from all liability as a joint tortfeasor. In our opinion, INA should not be permitted to relitigate the liability of any party, including Grove City College.

INA, by refusing to defend Langston, passed up and lost its opportunity to bring in Grove City College as a third party for liability or for contribution and indemnity.

## REDUCTION IN AMOUNT OF JUDGMENT

■ The release signed by Rensi in favor of Grove City College in consideration of $3,750 explicitly states "Joint Tort–Release of One Tortfeasor," i. e., Grove City College. In the Release, Rensi provided, ". . . I specifically reserve all claims and causes of action arising out of the above–mentioned occurrence *against all the other tortfeasors* . . . . and I agree to hold harmless and indemnify the said Grove City College

... of and from any loss, claim, liability, cost or expense growing out of any claim against [it] for contribution by any *alleged joint tortfeasor* under the Uniform Contribution Among Tortfeasors Act of the Commonwealth of Pennsylvania." [4] (Emphasis supplied.) In our opinion, Rensi specifically conceded that Grove City College was a joint tortfeasor.

The Release provided: "the consideration for this release shall be received in reduction of the total damages recoverable against all the other tortfeasors to the extent of the pro rata share of the said Grove City College ..."

Thus, INA's motion for partial summary judgment is granted, and the judgment against Langston will be reduced to $11,000 plus interest and costs. *Mazer v. Security Insurance Group*, 507 F.2d 1338 (3d Cir. 1975); *Griffin v. United States*, 500 F.2d 1059 (3d Cir. 1974).

## APPENDIX

### RELEASE                    B810L424167
#### (Person and Property)

#### (JOINT TORT–RELEASE OF ONE TORTFEASOR)

Know all men by these presents that  Randolph M. Rensi , being of legal age, for and in consideration of the payment of  Three Thousand Seven Hundred Fifty and no/100 ------------------  Dollars ($3,750.00   ) by  Grove City College , the receipt of which is hereby acknowledged, have released and discharged, and by this release do for myself, my heirs, executors, administrators and assigns, release and discharge the said  Grove City College  from all claims, damages, actions and suits of whatsoever kind, known or unknown, prior to and including the date hereof, and particularly for all injuries to person or damage to property, known or unknown, resulting from or to result from an occurrence which happened on or about the  7th  day of  December,  , 1974, at or near  Grove City College, Grove City, Pa. .

Should it appear that two or more persons or entities are jointly or severally liable in tort for the said injuries to person or damage to property resulting from or arising out of said occurrence, the consideration for this release shall be received in reduction of the total damages recoverable against all the other tortfeasors to the extent of the pro rata share of the said  Grove City College  and I specifically reserve all claims and causes of action arising out of the above-mentioned occurrence against all the other tortfeasors.

The payment made to me is upon my warranty that I have not received heretofore any consideration whatever for, nor have I released heretofore any person, firm or corporation from, any claim or liability for any injuries to person or property arising from said occurrence and I agree to hold harmless and indemnify the said  Grove City College  and his Insurance Carrier of and from any loss, claim, liability, cost or expense growing out of any claim against them or either of them for contribution by any alleged joint tortfeasor under the Uniform Contribution Among Tortfeasors Act of the Commonwealth of Pennsylvania.

I further state that I have carefully read the foregoing Release and know the contents thereof, and that I am signing the same as my own free act. I further intend to be legally bound by the promises herein contained.

If this release is executed by more than one person as releasor, the obligation, responsibility and liability of each such person shall be joint and several.

---

**4.** 42 Pa.C.S.A. §§ 8323–8327.

WITNESS my hand and seal this  3rd  day of  December , 1976 in the presence of:

Witnesses:

(s)  H. H. Wallace

1712 Frick Bldg.

ADDRESS

(X)  (s)  Randolph M. Rensi _____ (SEAL)

_____ (SEAL)

ADDRESS

M. C. 7014 1/57