OPINION OF THE COURT
Eli Wager, J.
Ordered that this motion by Eagle Insurance Company for summary judgment in this declaratory judgment action on the ground that the plaintiff has no duty to defend or indemnify either the defendant Everine Barraeau or the defendant Joseph Joses for an accident in which Joses was involved on April 7, 1988, is determined as follows.
*832 Plaintiff Eagle Insurance Company issued an automobile liability insurance policy to defendant Barraeau insuring her 1979 Chevrolet, for a period commencing December 31, 1987 to December 31, 1988. Eagle asserts that on February 9, 1988 it served Barraeau with a notice of termination and cancellation due to nonpayment of premiums.
On or about March 15, 1988, Barraeau sold this 1979 Chevrolet to defendant Joses for use as a vehicle for hire. On March 15, 1988, Joses filed an application for insurance coverage with the New York Automobile Insurance Plan (Plan) who assigned the policy to Eagle Insurance Company. On April 8, 1988, Joses registered and obtained plates for the car.
On April 7, 1988, Joses was driving this car when he was involved in a collision in which his passenger, Jacqueline Downie, was injured. Downie commenced an action against Joses, Barraeau and the driver of the other car.
As a result of the accident and lawsuit, a demand was made upon the plaintiff Eagle Insurance Company to provide a defense and to indemnify both the defendant Barraeau and the defendant Joses in accordance with the terms and conditions of their respective policies. Eagle commenced this declaratory judgment action claiming it has no duty to defend any of the named defendants under either the policy issued to Barraeau or the policy issued to Joses.
With respect to Joses, Eagle alleges that the policy was not effective until Joses registered the vehicle on April 8, 1988, which was one day after the accident. Plaintiff claims to find support for this proposition in section 11 (F) (1) of the New York Automobile Insurance Plan Rules which does in fact state that "[cjoverage shall become effective upon the issuance of legal registration”. However, immediately preceding this language is a limitation of its applicability. "The procedures hereinafter described in this subsection shall have application to all vehicle types which are eligible for assignment except public motor vehicles subject to Department of Motor Vehicle regulations governing For Hire registrants which require the issuance of an FH-1” (§ 11 [F]). Apparently plaintiff does not dispute that the vehicle is a for hire vehicle. Rather, plaintiff argues that the limitation quoted above only applies to the issuance of temporary identification cards and has nothing to do with the effective date of coverage.
The court finds this argument to be without merit. The title of rule 11 (F) is "issuance of temporary identification *833 CARDS FOR LIABILITY INSURANCE — PROCEDURE APPLICABLE ONLY TO ELIGIBLE VEHICLES WRITTEN ON A SPECIFIED CAR BASIS”.
Immediately thereafter follows the limitation excluding for hire vehicles from the procedures set forth in section 11 (F). Counsel’s attempt to take a portion of the procedure out from this limitation must fail by the clear language of section 11 (F), which specifically states that the procedures set forth therein do not apply to for hire vehicles. This becomes more evident if one continues to read the remaining sections of the Plan rules which counsel for both Eagle and Joses have provided.
Vehicles for hire require an FH-1 in order to obtain insurance. Insurance companies are required by section 15 (B) of the Plan rules to mail FH-1 certificates within two days after receipt of the required premium and properly completed request. Attached to Joses’ opposition papers is a copy of the FH-1 issued by Eagle to Joses applicable to the motor vehicle in question. On the FH-1, it states that Eagle has issued a policy complying with section 370 of the Vehicle and Traffic Law to Joseph Joses with an effective date of March 15, 1988, which is the date Joses filed an application for coverage with the Plan. The FH-1 also indicates that it is "[n]ot acceptable to obtain registration plates after 60 days from effective date.” By the terms of the FH-1, then, it was contemplated that registration would occur after the issuance and effective date of the policy.
Further support is found in section 12 of the Plan rules, entitled "designation of insurer and effective date of coverage”. Pursuant to section 12 (A) (1) coverage is to be effective "[a]t the time and date specified in the notice issued by the Plan, which date shall be 12:01 A. M. on the day of receipt of the application in the office of the Plan.”
Section 12 does indicate that for risks in which a temporary identification card has been issued, "[c]overage shall be effective in accordance with the provisions of 11 F.l”. However, it has already been determined that section 11 (F) (1) is inapplicable to cars for hire requiring an FH-1. Nowhere in section 12 is there an indication that coverage for vehicles for hire is effective on the date of registration or any time after the date of the receipt of the application and deposit.
The court finds support for this position in We Try Harder v Allcity Ins. Co. (118 Misc 2d 626 [Civ Ct 1983]) which delineates three methods in which coverage becomes effective *834 under Plan rules and differentiates between automobiles eligible for a temporary identification card and those that are not. Reliance by plaintiff on Aetna Cas. & Sur. Co. v Providence Washington Ins. Co. (55 AD2d 924 [2d Dept 1977], lv denied 42 NY2d 803 [1978]) is misplaced. The rule that the effective date is the date the car is registered applies only to those cases where the broker has issued a temporary identification card under section 11 (F) of the Plan rules (see, We Try Harder v Allcity Ins. Co., supra).
It is undisputed that Eagle received the application and required premium from Joses on March 15, 1988 and that on that date Eagle issued an FH-1 which indicated that insurance coverage was effective as of March 15, 1988. As Joses’ vehicle was for hire, it does not fall under the provisions set forth in rule 11 (F) and, therefore, the effective date of coverage was March 15, 1988, the date the application was filed and the premium paid.
For the reasons set forth above, plaintiff’s motion with respect to Joses is denied. As plaintiff has failed to meet its burden of demonstrating that it is entitled to summary judgment as a matter of law, the motion must be denied regardless of any defects in defendant’s opposition papers (Winegrad v New York Univ. Med. Center, 64 NY2d 851 [1985]; Hilltop Vil. Coop. No. 3 v Greenblatt, 163 AD2d 355 [2d Dept 1990]; Cugini v System Lbr. Co., 111 AD2d 114 [1st Dept 1985]).
Moreover, on a motion for summary judgment the court is entitled to search the record and grant summary judgment to a nonmoving party (CPLR 3212 [b]). As the record indicates that Joses’ policy was effective March 15, 1988, summary judgment is granted in favor of defendant Joses and that part of plaintiff’s complaint is dismissed. The parties have charted a course for summary judgment disposition and the court is empowered to act accordingly.
That part of the motion seeking summary judgment with respect to Everine Barraeau cannot be determined on the papers before the court.
Accordingly, a hearing shall be held at IAS Part IX on June 10, 1991 at 9:30 a.m. to determine whether the policy issued to Barraeau was properly terminated by Eagle. Additionally, a hearing shall be held at that time to resolve the issue of *835 attorneys’ fees claimed by the defendant Joses. This is an area where apparently the awarding of such fees is permissible, since the insured was forced to defend his position in an action instituted by plaintiff carrier (see, Mighty Midgets v Centennial Ins. Co., 47 NY2d 12 [1979]).