**Mary BUCK, Individually and on Behalf of the Estate of David N. Buck, Sr., Plaintiff,**

v.

**HORSEHEADS INDUSTRIAL CAPITAL MANAGEMENT, II, LLC, as Successor in Interest to Horseheads Industrial Capital Management, LLC, et al., Defendants.**

No. 02–CV–6506L.

United States District Court, W.D. New York.

March 31, 2005.

James B. Reed, Ziff, Weiermiller & Hayden, Elmira, NY, for Plaintiff.

Glenn E. Pezzulo, Culley, Marks, Tanenbaum & Pezzulo, Debra Martin, Martin & Iati LLP, Michael R. Law, Phillips Lytle LLP, Anthony J. Piazza, Hiscock & Barclay LLP, Rochester, NY, Lawrence Leclair, Sayles & Evans, Elmira, NY, for Defendants.

*DECISION AND ORDER*

LARIMER, District Judge.

This action began as a wrongful death action against Horseheads Industrial Capital Management, II, LLC ("Horseheads"). As will be explained below, however, the only remaining claim is Horseheads' third-party claim against The Travelers ("Travelers"). The remaining claims have been settled among the parties. Both Horseheads and Travelers have moved for summary judgment. For the reasons that follow, Travelers' motion is granted, Horseheads' motion is denied, and Horseheads' claims against Travelers are dismissed.

## FACTUAL BACKGROUND

In June 2000, Horseheads entered into a contract with CFE, Inc. ("CFE"), in which CFE agreed to re-roof a building owned by Horseheads in Horseheads, New York. The contract provided, in part, that CFE would indemnify and hold harmless Horseheads with respect to any claims arising out of the performance of the roofing work. Dkt. # 27, Ex. B § 9.12. Pursuant to the terms of the contract, CFE also obtained from Travelers a liability insurance policy ("the policy") both for itself, and for Horseheads as an "additional insured." Dkt. # 27, Ex. A, C. The policy stated, in part, that "[a]ny coverage provided ... to an additional insured shall be excess over any other valid and collectible insurance available to the additional insured ... unless a written contract or agreement specifically requires that this insurance apply on a primary or contributory basis." Dkt. # 27, Ex. C ¶ 4.

On October 11, 2000, a CFE employee, David N. Buck, Sr., was fatally injured after falling through an open skylight on the roof of Horseheads' building. Horseheads then approached CFE, seeking assurances that CFE would indemnify Horseheads for any claims arising out of the fatal accident. Allegedly because CFE failed to give it such assurances, Horseheads refused to make any further payments on the construction job. In response, CFE filed a mechanic's lien against Horseheads.

Horseheads and CFE agreed to submit their dispute to arbitration, which culminated in a settlement agreement entered into on November 30, 2001. Dkt. # 27, Ex. B. CFE agreed to vacate its mechanic's lien, and the parties also agreed on a schedule for Horseheads' payments to CFE

David Buck's widow, Mary Buck, commenced a wrongful death action against Horseheads in October 2002. Shortly thereafter, Horseheads tendered the case to CFE and Travelers, and requested that they defend and indemnify Horseheads, pursuant to the policy and the indemnification provision of the contract between Horseheads and CFE. Travelers initially declined to defend, claiming that it needed time to "clarify" who was at fault: Horseheads or CFE. Travelers contended that under the terms of the policy, it did not have a duty to defend Horseheads against claims arising out of Horseheads' own negligence, but only against claims arising out of CFE's negligence. Travelers also took the position that the policy was for excess coverage only, and that Horseheads should looked in the first instance to its primary carrier, Kemper Insurance Company ("Kemper").

Kemper did provide Horseheads with a defense, but, because of Travelers' failure to defend, Horseheads filed a third-party complaint against CFE and Travelers on December 30, 2002. In October 2003, Travelers finally informed Horseheads that, based on its investigation of the accident, it would assume Horseheads' defense, and it proceeded to do so. Eventually, in April 2004, Travelers, on behalf of CFE and Horseheads, settled the *Buck* claim, paid the plaintiff approximately $450,000, as well as about $10,000 in attorney's fees that Horseheads had incurred in defending the underlying wrongful death action, prior to Travelers' assumption of the defense.

In the meantime, however, another dispute had arisen between Horseheads and CFE. Based on CFE's and Horsehead's initial refusal to defend Horseheads, Horseheads again refused to make any further payments to CFE for construction of the roof. Horseheads contended that it was excused from doing so because of CFE's material breach of the contract by failing to defend and indemnify Horseheads in the

*Buck* wrongful death action. CFE then filed a counterclaim against Horseheads for the balance remaining on their contract for the roofing job, as well as a cross-claim seeking indemnity from Travelers as to any liability that CFE might have to Horseheads.

Horseheads and CFE have again settled their claims against each other, and all that remains in this action is Horseheads' claim against Travelers for attorney's fees and costs (totaling about $41,000) attributable to Horseheads' prosecution of its third-party action. There are no material issues of fact related to that claim, so the only question before the Court is the legal question of whether Horseheads is entitled to recover those amounts. I conclude that it is not.[1]

## DISCUSSION

In support of its assertion that the "excess coverage" language in the policy did not excuse Travelers from defending Horseheads in the wrongful death action, Horseheads relies chiefly on the New York Court of Appeals' decision in *Pecker Iron Works v. Traveler's Insurance Co.*, 99 N.Y.2d 391, 756 N.Y.S.2d 822, 786 N.E.2d 863 (2003). On facts similar to those in the case at bar, the court in *Pecker Iron Works* held that a subcontractor's liability policy naming the plaintiff contractor as an "additional insured" provided the contractor with primary coverage, notwithstanding language in the policy stating that coverage of additional insureds would be excess unless the parties agreed in writing that coverage would be primary. In so holding, the court stated that " '[a]dditional insured' is a recognized term in insurance contracts," and that "the 'well-understood

meaning' of the term is 'an entity enjoying the same protection as the named insured.' " *Id.* at 393, 756 N.Y.S.2d 822, 786 N.E.2d 863 (quoting *Del Bello v. General Acc. Ins. Co.*, 185 A.D.2d 691, 692, 585 N.Y.S.2d 918 (4th Dep't 1992)) (additional internal quotes omitted). The court added that "[p]ursuant to the policy provision at issue, Travelers agreed to provide primary insurance to any party with whom [the subcontractor] had contracted in writing for insurance to apply on a primary basis. When [the subcontractor] agreed to it, the policy provision was satisfied." *Id.* at 394, 756 N.Y.S.2d 822, 786 N.E.2d 863.

*Pecker Iron Works*, then, does seem to support Horseheads' contention that Travelers owed it a duty to defend and indemnify. The problem for Horseheads, however, is that Travelers *has* fulfilled that obligation, even if belatedly. Travelers did defend and fully indemnify Horseheads on the *Buck* wrongful death claim. The fact that Travelers did not decide to do so as quickly as Horseheads would have liked does not mean that Horseheads is entitled to be compensated for its attorney's fees and costs incurred in *Horseheads'* third-party action against Travelers.

The *Pecker Iron Works* decision is silent on the issue, but in *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 21, 416 N.Y.S.2d 559, 389 N.E.2d 1080 (1979), the New York Court of Appeals enunciated "the rule in New York that such a recovery [of attorney's fees or other expenses] may not be had in an affirmative action brought by an assured to settle its rights [as against the insurer], but only when he has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations."

---

1. Horseheads also states that it has incurred other damages allegedly flowing from Travelers' delay in defending Horseheads, such as increased liability insurance premiums and difficulty finding tenants for the building where David Buck was killed. Horseheads offers scant factual, and no legal, support for its claims for these damages, however, and these claims are also dismissed.

The court added that "unlike the circumstances presented when an insurer compels its assured to defend against its attempts to obtain a declaration of its right to disclaim, here it is the insured itself that has taken the offensive. Furthermore, it is not inherently unfair to disallow recovery for litigation fees to a prevailing party when these would not be assessed against an unsuccessful one." *Id.* at 22, 416 N.Y.S.2d 559, 389 N.E.2d 1080. *See also Schwamb v. Fireman's Ins. Co. of Newark, New Jersey,* 41 N.Y.2d 947, 949, 394 N.Y.S.2d 632, 363 N.E.2d 356 (1977) (although "there [wa]s no doubt that [the insurer] was obligated to defend" the insured in an action against the insured, court found no error in denial of insured's request for attorney's fees in his action against insurer); *Johnson v. General Mut. Ins. Co.,* 24 N.Y.2d 42, 46, 298 N.Y.S.2d 937, 246 N.E.2d 713 (1969) (although insured was entitled to damages for his expenses in defending declaratory judgment actions against him, "[h]e may not, however, recover the expenses of prosecuting his cross claims against the insurer"); *Hershberger by Hershberger v. Schwartz,* 198 A.D.2d 859, 860, 604 N.Y.S.2d 428 (4th Dep't 1993) ("An insured is not entitled to recover the costs and expenses of bringing an affirmative action to settle his rights, but may recover only when he has been cast in a defensive posture by the action of an insurer in an effort to absolve itself from its policy obligations"); *cf. Hurney v. Mattson,* 59 A.D.2d 934, 935, 399 N.Y.S.2d 449 (2d Dep't 1977) (insureds

were entitled to recover attorney's fees and costs incurred in their defense of insurer's counterclaim for declaratory relief, since "[t]heir posture in the counterclaim, brought as a result of the insurer's breach of its obligation to defend, was that of defendants").

This authority makes clear that Horseheads is not entitled to attorney's fees or costs incurred in its own, third-party action against Travelers. Accordingly, Travelers is entitled to summary judgment dismissing Horseheads' claims against it.

Finally, I note that, as part of their most recent settlement agreement, CFE agreed to assign to Horseheads any claim that CFE had against Travelers.[2] CFE's cross-claim only sought indemnification in the event that Horseheads was able to prove damages as a result of Travelers' delay in indemnification and defense, however. *See* Dkt. # 49 ¶¶ 30, 36. Since Horseheads cannot do so, CFE has no valid claim to assign.[3]

## CONCLUSION

The Travelers' motion for summary judgment (Dkt. # 52) is granted, and the complaint is dismissed as to The Travelers.

Plaintiff's cross-motion for summary judgment against The Travelers (Dkt. # 62) is denied.

IT IS SO ORDERED.

**2.** By letter dated March 30, 2005, counsel for CFE has informed the Court that CFE and Horseheads have "tentatively" settled their claims against each other, although Horseheads has apparently not yet carried out certain acts called for by the terms of the settlement. It is with the understanding that CFE and Horseheads have reached a settlement agreement that the Court forbears deciding their cross-motions for summary judgment against each other, and the Court certainly expects both parties to abide by the terms of the settlement.

**3.** The contract between Horseheads and CFE does provide that in any litigation between Horseheads and CFE arising out of the contract, the prevailing party is entitled to attorney's fees. That has no bearing on Horseheads' claim against Travelers, though, since Travelers was not a party to that contract.