[882 NYS2d 102]

Arthur Batsidis, Appellant, v Wallack Management Company, Inc., et al., Respondents.

First Department, July 2, 2009

APPEARANCES OF COUNSEL

*Warren S. Hecht*, Forest Hills, for appellant.

*Axelrod, Fingerhut & Dennis*, New York City (*Lance Luckow* of counsel), for respondents.

### OPINION OF THE COURT

SAXE, J.P.

This dispute concerns the scope of a cost-shifting provision in a standard alteration agreement between the proprietary lessee of a co-op apartment and the cooperative corporation and its management company. We hold that the cost-shifting provision is proper, clear, unambiguous and enforceable as written; we reject plaintiff's contention that the provision may be applied only where the cooperative corporation is determined to be the prevailing party and the fees it incurred in relation to its oversight of the proposed alterations are determined to be reasonable. However, as a procedural matter, since defendants stipulated to allow plaintiff to recommence the work upon his completion of stated conditions, and the court so-ordered that stipulation by way of resolving plaintiff's motion for an order authorizing him to resume work, defendants must be precluded at this juncture from using plaintiff's obligation to pay those costs as an impediment to his resumption of the agreed-upon renovation work.

Defendant 225 East 57th Street Owners, Inc. is the owner of the residential cooperative located at 225 East 57th Street; defendant Wallack Management Company is its managing agent. Plaintiff is the nonresident proprietary lessee of apartment 9C.

Plaintiff sought to renovate the kitchen and one bathroom in apartment 9C and to perform minor work in the rest of the

apartment. He submitted a proposal, which was reviewed by the co-op's engineer and approved. The parties entered into an alteration agreement dated June 15, 2007.

Paragraph 7 of the agreement entitles the co-op to charge the unit owner for costs it incurs with respect to the renovation work:

> "If the Corporation is required, or deems it wise, to seek legal, engineering, electrical, architectural or other advice relating to the work or this Alteration Agreement, at any time and from time to time prior to or after granting permission for the work to be performed, *the Shareholder hereby agrees to reimburse on demand all fees and disbursements incurred by the Corporation with respect to the same,* whether or not the Corporation grants permission for performance of the work. *The Shareholder agrees to reimburse the Corporation for all such expenses promptly upon receipt of the Corporation's bill for the same,* and if permission is granted, then *all fees incurred prior to commencement of the work shall be reimbursed to the Corporation prior to such commencement"* (emphasis added).

Paragraph 32 provides that all expenses and fees required to be paid by the shareholder will be considered additional rent under the lease.

Plaintiff began work on the premises. On October 2, 2007, the resident superintendent, Larry McCool, went to the apartment in response to a complaint of excessive noise, and observed that severe cuts had been made into a structural column, which damaged the column, and that the work undertaken exceeded the scope of the work set forth in plaintiff's renovation proposal. McCool shut down the job pursuant to paragraph 30 of the alteration agreement, which provides that upon a breach of the alteration agreement the co-op corporation has the right to suspend all work and to prevent workers from entering the building and the apartment, and to revoke its permission for performance of the work.

Plaintiff commenced this action on October 30, 2007, seeking damages for breach of contract and a mandatory injunction compelling defendants to permit him to resume work on the premises. Defendants counterclaimed for attorneys' and engineers' fees, and asserted that plaintiff's proposed renovations were not undertaken in accordance with the proposal and

therefore that plaintiff was in default of his obligations under both the alteration agreement and the proprietary lease.

Plaintiff moved for preliminary injunctive relief, and on November 15, 2007, the motion's return date, it was resolved by so-ordered stipulation. The parties agreed that plaintiff would retain a licensed home improvement contractor and submit required documentation and proof of insurance, that plaintiff's own electrical contracting firm would perform electrical work only, that any channeling and other invasive work would require advance written approval, and that repairs to the column previously channeled by plaintiff would be performed in accordance with the requirements of defendants' engineer. The stipulation allowed plaintiff to proceed with the work once those conditions were satisfied: "As soon as P[laintiff] provides the material in the immediately preceding [paragraph], P[laintiff] may complete the renovation; however[,] the channeling repair and the HVAC work may proceed before such time, i.e., w/o delay[,] in accordance with Blum's directives."

Despite this so-ordered resolution of plaintiff's application to be allowed to recommence the work, when he sought to proceed with the work in compliance with those terms, defendants would not permit its resumption until plaintiff paid the fees they claimed they incurred for the services of legal counsel and the engineer they consulted.

After an exchange of letters, plaintiff, relying on the terms of the so-ordered stipulation, brought another motion, requesting an order compelling defendants to allow the resumption of the renovations. Defendants argued that the stipulation was always subject to the alteration agreement and contained no waiver of defendants' rights under that agreement. The motion court agreed with defendants and denied the motion.

■ At the outset, we reject plaintiff's contention that the cost-shifting provision of the alteration agreement may be applied only where the co-op establishes that it is the prevailing party and that the expert or legal fees it seeks to impose on plaintiff are reasonable. Nothing in law or public policy supports limiting the provision in that manner or precludes its enforcement as written. Indeed, the provision is reasonable.

Plaintiff's reliance on case law limiting successful litigants' entitlement to legal fees is misplaced. The general rule that legal fees are not awarded for the successful prosecution or defense of an action does not apply here (*see Alyeska Pipeline Service Co. v Wilderness Society*, 421 US 240, 247 [1975]; *Mighty*

*Midgets v Centennial Ins. Co.*, 47 NY2d 12, 21-22 [1979]). We are not dealing with "a provision in an agreement allowing the recovery of attorneys' fees that are 'incidents of litigation' " (*see Horwitz v 1025 Fifth Ave., Inc.*, 34 AD3d 248, 249 [2006]). Such provisions, including lease provisions for attorneys' fees resulting from the successful prosecution of tenant defaults, and the converse entitlement created by Real Property Law § 234, are strictly construed, so as to further the important public policy of ensuring that people are not dissuaded from seeking judicial redress of wrongs (*see Matter of A.G. Ship Maintenance Corp. v Lezak*, 69 NY2d 1, 5 [1986]).

A completely different policy concern applies to the cost-shifting provision under consideration here. The form alteration agreement used by defendants is based on a model form promulgated in 2000 by the Residential Management Council of the Real Estate Board of New York, in conjunction with the Committee on Cooperative and Condominium Law of the Association of the Bar of the City of New York. The purpose of the form agreement is "to make sure that shareholders renovate in a way that ensures the safety and comfort of the residents, the financial interests of the co-op and the physical integrity of the building" (Romano, New York Times, Oct. 22, 2000, section 11, at 5, col 1). Paragraph 7 of the agreement, which unequivocally makes the shareholder solely responsible for costs such as engineering and legal fees incurred by the co-op in connection with consideration and review of the proposed and actual work, is intended to ensure that the co-op and its other shareholders are not burdened with any expenses resulting from renovations to a shareholder's individual unit. Such expenses may arise without regard to whether any litigation occurs and, indeed, regardless of whether the proposed work is approved or performed. To require the renovating shareholder to pay those costs is an appropriate means of allowing unit owners to perform renovations while protecting the co-op and its members from being saddled with the expenses that they incur arising out of the renovations.

To limit the application of the cost-shifting contract provision to circumstances where the co-op is determined to be the prevailing party would be senseless; frequently in such circumstances, there will not be a clear prevailing party, or even any litigation. Nor would it be appropriate to require the co-op to demonstrate to a finder of fact the reasonableness of the fees it incurred. Indeed, that would largely eviscerate the purpose of

the cost-shifting measure. Of course, while the co-op initially has the right to payment, if the co-op claimed an unjustifiable amount in fees, the shareholder would be entitled to challenge that claim in a plenary action.

Although we hold that there is nothing improper about the contract provision requiring plaintiff to pay the co-op's actual costs incurred in relation to plaintiff's performance of the renovation work, the co-op's demand was made too late to be properly interposed as a condition to the resumption of the halted work. When they resolved plaintiff's motion for mandatory injunctive relief by entering into the stipulation allowing plaintiff to resume the halted work on certain stated conditions, and—even more importantly—when they had the court so-order that stipulation, the parties in effect entitled plaintiff to proceed with the work that had been halted by defendants without any further conditions at that time.

■ Defendants are correct that the so-ordered stipulation neither superseded the parties' obligations under the alteration agreement nor waived their rights. Nevertheless, while the so-ordered stipulation did not abrogate defendants' rights under the alteration agreement, it did suspend them in the context of the resolution of an application for judicial intervention. That is, by agreeing to permit plaintiff to resume the halted renovation work as long as he satisfied the specified conditions, defendants relinquished their entitlement to halt the work or preclude its resumption once the conditions were satisfied. It was incumbent on defendants, in court on the return date of the motion, to include all conditions to be fulfilled before performance of the work could be continued. Even if the co-op did not know, at the time of the stipulation, the exact total of its costs, it knew that costs were being incurred. The co-op's failure to include at that time the condition that plaintiff first pay their fees before resuming the work precludes it from imposing that condition now and preventing plaintiff from resuming work it already agreed to permit him to resume.

Moreover, by so-ordering the stipulation, the motion court in effect issued an order granting plaintiff's motion to the extent of directing that he be allowed to resume the halted work upon his satisfaction of the conditions set by defendants. Defendants cannot be permitted to undermine the court's directive.

The situation would be different if improprieties had newly been discovered in the work, justifying new countermeasures by defendants, but that is not the case here.

We emphasize that this ruling does not extinguish or interfere with defendants' right to collect the claimed fees in full, which they may do by a variety of means, including charging the fees as additional rent pursuant to paragraph 32 of the alteration agreement, and commencing a plenary action.

Accordingly, the order of the Supreme Court, New York County (Michael D. Stallman, J.), entered May 13, 2008, which, to the extent appealed from as limited by the brief, denied plaintiff's motion to allow him to resume renovation of the subject premises without paying certain engineering and legal fees as set forth in the alteration agreement between the parties, should be reversed, on the law, without costs, the motion granted and plaintiff permitted to resume work, and the matter remanded for further proceedings consistent herewith.

BUCKLEY, McGUIRE, MOSKOWITZ and ACOSTA, JJ., concur.

Order, Supreme Court, New York County, entered May 13, 2008, reversed, on the law, without costs, plaintiff's motion granted and plaintiff permitted to resume work, and the matter remanded for further proceedings consistent herewith.