Morris ADES, Apmont Group, Inc., the Equity Group, Inc. Profit Sharing Trust, Jerome I. Feldman, S. Marcus Finkle, Sandra Glicksman, Goldstein, Golub & Kessler Profit Sharing Trust, Philippe Grelsamer, Richard Kessler, James J. Manning, Markin Trading Corp. Pension Trust, Randolph K. Pace, Anna B. Rosen, Dennis Silberman and Martin Stern, Plaintiffs,

v.

DELOITTE & TOUCHE, Winifred Schuberth, John Hanny, David F. Randall and Luis Santacaterina, Defendants.

DELOITTE & TOUCHE,
Defendant/Third–Party
Plaintiff,

v.

BOLAR PHARMACEUTICAL CO., INC., Robert Shulman, Eastlake Securities, Inc., William T. Hultquist, Lawson Mardon Group Limited, Lawson Mardon, Inc., and Garrett Cronin, Third–Party Defendants.

Nos. 90 Civ. 4959 (RWS),
90 Civ. 5056 (RWS).

United States District Court,
S.D. New York.

Feb. 7, 1994.

Shea & Gould, New York City, for defendant Deloitte & Touche; Mark E. Davidson, of counsel.

Robinson Brog Leinwand Reich Genovese & Gluck, P.C., New York City, for third–party defendant Eastlake Securities; Richard W. Cohen, David C. Burger, of counsel.

## OPINION

SWEET, District Judge.

Third-party defendants Eastlake Securities Inc. ("Eastlake") have moved, pursuant to Rule 3(j) of the Civil Rules of the Southern District of New York ("Local Rule 3(j)") for an order granting them leave to reargue that portion of their motion, filed January 6, 1993, relating to the dismissal of the Rule 10b–5 claims under the Securities Exchange Act of 1934 alleged in Deloitte & Touche's ("D & T") third party complaint against Eastlake (the "Third Party Complaint"), and, upon reconsideration, for an order pursuant to Rules 56(c) and 12(b)(6) of the Federal Rules of Civil Procedure dismissing the claims alleged against Eastlake under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.-10b–5 ("10b–5"), in the Third Party Complaint.

For the following reasons, the motions are denied.

### The Parties

The parties, facts, and prior proceedings in this matter are more fully discussed in this Court's opinion in this matter reported at 1993 WL 362364, 1993 U.S.Dist. LEXIS 12901 (S.D.N.Y. Sept. 16, 1993) (the "September 16 Opinion"), familiarity with which is assumed. Third Party plaintiff D & T is a partnership of certified public accountants with a place of business in New York State. It is the successor in interest to Touche Ross & Co., a national accounting firm which acted as Qmax Technology Group, Inc.'s ("Qmax") independent auditor at all relevant times.

Qmax was a Delaware corporation with a place of business in Ohio which issued and defaulted on certain promissory Notes (the

"Notes") in July, 1988. Qmax filed for protection from its creditors under Chapter 11 of the United States Code on August 3, 1989, and pursuant to 11 U.S.C. § 362(a) it is not a party to any of these proceedings.

The plaintiffs in the underlying action are purchasers of the Notes on which Qmax defaulted (the "Investors"). They have sued D & T and four former officers and directors of Qmax, alleging among other things that D & T recklessly failed to correct the misimpressions created by D & T's approval of an opinion for Qmax for use in the private placement of the Notes.

Third Party defendant Eastlake is a New York corporation and licensed underwriter which acted as the placement agent for the private placement of Qmax's notes offered in August, 1988.

### Prior Proceedings

The Investors originally filed two complaints, *Ades v. Deloitte & Touche*, 90 Civ. 4959 (filed July 26, 1990), and *Lane v. Deloitte & Touche*, No. 90 Civ. 5056 (filed July 30, 1990), which were later consolidated and amended into one complaint filed on February 14, 1992 (the "Complaint").

The portions of the Complaint relevant to D & T relate to alleged misrepresentations in an accountants' review report issued by D & T dated August 4, 1988 (the "Review" or the "Review Report") which stated, among other things, that D & T found no material change in Qmax's finances from Qmax's financial statements from the previous year.

D & T's first motion to dismiss the Investors' complaints for failure to plead fraud with particularity was granted in full. D & T's second motion to dismiss the Investors' new Amended Complaint, however, was denied in an opinion dated August 11, 1992, familiarity with which is assumed. *See Ades v. Deloitte & Touche*, 799 F.Supp. 1493 (S.D.N.Y.1992).

After its motion to dismiss the Investors' Amended Complaint was denied, D & T filed an answer and cross-claims on September 14, 1992, controverting the central allegations of the complaint. In December 1992, pursuant to Fed.R.Civ.P. 14(a), D & T filed the Third Party Complaint against Eastlake and certain other third party defendants.

The September 16 Opinion granted Eastlake's motion to dismiss the state law contribution claims asserted against them, leaving D & T's Rule 10b–5 contribution claims as the sole remaining claims against Eastlake. The present motion was taken on submission on October 20, 1993, and was considered fully submitted as of that date.

### The Facts

As discussed in the September 16 Opinion, all of the factual allegations in a complaint must be accepted as true on a motion to dismiss. The facts below, therefore, are taken from the Third Party Complaint, affidavits, exhibits, and the Investors' Amended Complaint (incorporated by reference in the Third Party Complaint) and do not represent factual findings by the Court.

In June of 1983 Qmax decided to develop and manufacture various cosmetic products and to prepare printed samples of cosmetics and pharmaceuticals. These ventures relied, in part, upon two technologies owned by Qmax: microencapsulation and liquid crystal technology. On December 24, 1986, Qmax entered into a letter agreement for a Joint Venture to build a pharmaceutical plant, the Transpharma Plant, adjacent to Qmax's existing plant in Vandalia, Ohio to manufacture pharmaceutical chemicals using Qmax's microencapsulated technology.

FDA requirements and the parties' desires to have a multipurpose capability made the Transpharma Plant much more expensive to build than had been originally planned. On April 23, 1988, Qmax filed a Form S–3 registration statement with the SEC which disclosed that plant construction costs of the Joint Venture had overrun by $4 million. In July 20, 1988, Qmax filed an amendment to the SEC filings which disclosed that there could be no assurance that Qmax would be able to recover its joint venturers' full share of the overruns. On August 5, 1988, Qmax filed another amendment to its SEC filings which disclosed that it now believed the Joint Venture would require up to $8 million in additional funds, and explicitly stated that the success of Qmax was materially dependent upon the success of the Joint Venture.

Eastlake entered into a letter of intent dated July 21, 1988 with Qmax to underwrite a public offering of Qmax securities scheduled for 1989. Eastlake also arranged for interim bridge financing for Qmax in the form of the Private Placement of the Notes. The Notes, with a face value of $2.2 million and an interest rate of 10%, were due and payable within one year, on July 1, 1989, or as soon as the Public Offering was successful.

As a condition of the Investors' purchase of the Notes, Qmax was required to have D & T review, in accordance with standards established by the American Institute of Certified Public Accountants ("AICPA"), its consolidated interim financial statements as of March 31, 1988 and for the three-month and nine-month periods ended March 31, 1987 and 1988. D & T represented in the Review Report dated August 4, 1988 that it performed a review in accordance with AICPA standards of the consolidated interim financial statements of Qmax as of March 31, 1988, and for the three and nine month periods ended March 31, 1987 and 1988, and that these statements fairly represented the financial condition of Qmax and were in conformity with GAAP and other accounting standards.

The Review carried no auditors' opinion as to whether Qmax would continue as a going concern or not. In the Review, D & T also represented that it had previously examined, in accordance with GAAP, prior financial data for Qmax and that the information set forth in the 1987 Audit Report was fairly stated in all material respects. Although D & T apparently had qualified its opinion of Qmax's audited 1986 balance sheets, Qmax's 1987 Audit Report had received a "clean" or unqualified opinion from D & T, and the 1987 Audit Report was included in the Private Placement along with the interim financial statements and the Review Report. By letter dated August 18, 1988, D & T consented to the use of the Review Report in the Securities Purchase Agreement between Qmax and the Investors (the "Consent Letter").

The Notes were sold to the Investors through the Private Placement in August and September of 1988. After the closing of the sale of the Notes, D & T audited Qmax's financial statements for the year ending June 31, 1988, and on October 24, 1988 issued a qualified auditor's opinion expressing uncertainty as to Qmax's ability to continue as a going concern.

Although over $2 million in additional financing was raised through the sale of the Notes, Qmax filed for bankruptcy on August 3, 1989, shortly after it defaulted on the Notes. The Investors' Amended Complaint alleges that the Investors purchased the Notes in reliance upon statements and representations as to Qmax's financial condition, express and implied, made by D & T in its Review of Qmax's financial statements.

D & T's Third Party Complaint alleges that Eastlake represented Qmax to the Investors as a financially sound going concern, which would be able to repay the Notes from either the operating revenues derived from the Joint Venture or the proceeds of the Public Offering or both, although Eastlake had an obligation to conduct its own due diligence investigation into the business, operations and prospects of Qmax, and as agent of Qmax, Eastlake had access to material non-public proprietary information about Qmax's business.

### Discussion

### Standard for Motion to Reargue Under Local Rule 3(j)

█ Local Rule 3(j) provides in pertinent part: "There shall be served with [a] notice of motion [for reargument] a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." The standards controlling a motion for reargument pursuant to Local Rule 3(j) and a motion to amend the judgment pursuant to Rule 59(e), Fed.R.Civ. P., are the same. *See Morser v. AT & T Info. Sys.*, 715 F.Supp. 516, 517 (S.D.N.Y. 1989); *Lotze v. Hoke*, 654 F.Supp. 605, 607 (E.D.N.Y.1987). Thus, to be entitled to reargument under Local Rule 3(j), Eastlake must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion. *See Violette v. Armonk Assocs. L.P.*, 823 F.Supp. 224, 226 (S.D.N.Y.1993);

*Morin v. Truipin,* 823 F.Supp. 201, 205 (S.D.N.Y.1993); *East Coast Novelty Co. v. City of New York,* 141 F.R.D. 245, 245 (S.D.N.Y.1992).

Local Rule 3(j) is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court. *See Caleb & Co. v. E.I. Du Pont De Nemours & Co.,* 624 F.Supp. 747, 748 (S.D.N.Y.1985). In deciding a Local Rule 3(j) motion, the court must not allow a party to use the motion to reargue as a substitute for appealing from a final judgment. *See Morser,* 715 F.Supp. at 517.

D & T's third party complaint alleges that, if D & T is found liable under Rule 10b–5, Eastlake is liable to D & T for contribution for Rule 10b–5 violations in connection with its failure as placement agent to discover that three major accounts receivables were recorded improperly in Qmax's financial statements. Eastlake moved for dismissal of the Rule 10b–5 claims on the grounds that D & T did not allege facts sufficient to satisfy the scienter requirement of a Rule 10b–5 claim. In opposition to Eastlake's motion to dismiss, D & T asserted that Eastlake had acted recklessly in failing to discover the flaws in Qmax's financial statements.

Eastlake claims in the present motion to reargue that "the Court erroneously applied a negligence standard to Eastlake's claims that D & T did not plead or demonstrate facts from which the requisite rule 10b–5 scienter could be inferred." Eastlake asserts that, rather than mere negligence, the scienter required to show a violation of Rule 10b–5 must be at least recklessness, which is defined as an "extreme departure from standards of ordinary care." (Eastlake Mem. at 3 (quoting *Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 47 (2d Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978))).

The cases that Eastlake cites in support of this proposition are *Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38 (2d Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978); *Hollinger v. Titan Capital Corp.,* 914 F.2d 1564 (9th Cir.1990), *cert.*

*denied,* 499 U.S. 976, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991); *Sundstrand Corp. v. Sun Chem. Corp.,* 553 F.2d 1033 (7th Cir.), *cert. denied,* 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977); *Modern Settings, Inc. v. Prudential–Bache Sec., Inc.,* 602 F.Supp. 511 (S.D.N.Y.1984); and *The Limited, Inc. v. McCrory Corp.,* 683 F.Supp. 387 (S.D.N.Y. 1988).

Two of these, *Hollinger* and *Sundstrand,* are not in this circuit, and of the remaining three, *Modern Settings* and *The Limited* are lower court decisions and are, therefore, not "controlling" within the terms of Local Rule 3(j).

The one case which is "controlling" within the terms of Local Rule 3(j), *Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38 (2d Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978), was clearly not overlooked by the Court, having been cited in the September 16 Opinion. *See Ades v. Deloitte & Touche,* 1993 WL 362364, at *14–*15, 1993 U.S.Dist. LEXIS 12901, at *46–*47 (S.D.N.Y. Sept. 16, 1993). This fact alone makes Eastlake's motion to reargue untenable.

The authority cited from other jurisdictions or from lower courts within this jurisdiction stand for the proposition that negligence, as opposed to extreme recklessness, will not satisfy the scienter requirement under Rule 10b–5. In addition to the fact that these opinions are not "controlling" within the terms of Local Rule 3(j), Eastlake can not claim that the September 16 Opinion overlooked these opinions unless that Opinion failed to apply a recklessness standard in evaluating D & T's claims.

The September 16 Opinion noted that, in its "due diligence" defense, Eastlake relied on *In re Software Toolworks, Inc.,* 789 F.Supp. 1489 (N.D.Cal.1992), where summary judgment was granted to the underwriters of a public offering of a software company which designed products for the computer game market created by Nintendo of America. The September 16 Opinion stated that the plaintiffs in *Software Toolworks* had "failed to establish recklessness on the part of [the Defendants]." *Ades,* 1993 WL 362364, at *20, 1993 U.S.Dist. LEXIS 12901, at *63. Furthermore, the September 16

Opinion noted that "Eastlake ... alleges that any recklessness on the part of D & T was not mirrored in its own behavior." *Id.*, 1993 WL 362364, at \*20, 1993 U.S.Dist. LEXIS 12901 at \*65.

In rejecting Eastlake's argument that the Third Party Complaint fails to plead scienter on the part of Eastlake with the particularity required by Rule 9(b), F.R.Civ.P., the September 16 Opinion stated that "D & T has alleged factual issues which preclude dismissal for lack of particularity about Eastlake's scienter or recklessness." *Id.*, 1993 WL 362364, at \*21, 1993 U.S.Dist. LEXIS 12901 at \*68. The standard applied in reaching this conclusion was that "[a]n inference of "recklessness" satisfying the scienter requirement may be drawn from facts demonstrating conduct that the defendant disseminated material 'knowing [it was] false or that the method of preparation was so egregious as to render [the] dissemination reckless.'" *Id.* (citing *Ades v. Deloitte & Touche*, 799 F.Supp. at 1498–99). This indicates that the September 16 Opinion did not overlook the recklessness standard mandated by *Rolf* and applied in *Hollinger, Sundstrand Corp., Modern Settings,* and *The Limited.*

Eastlake does not argue that the Court "overlooked" the factual matters discussed in its motion for reargument, all of which were extensively briefed by Eastlake in the papers submitted in connection with the original motion. Whether or not these matters were discussed in the September 16 Opinion, they were considered by the Court. *Cf. Market St. Ltd. Partners v. Englander Capital Corp.*, 1993 WL 276062, at \*1, 1993 U.S.Dist. LEXIS 10002, at \*3 (S.D.N.Y. July 21, 1993).

The present motion is, instead, predicated on the Court's alleged erroneous application of a negligence standard to the pleading requirements of scienter for purposes of Rule 10b–5. For the reasons stated above, it is clear that the Court did not "overlook" any factual matters or controlling case law. Any attempt by Eastlake to dispute the legal conclusions derived from these facts and cases in the September 13 Opinion is inappropriate in a motion to reargue under Local Rule 3(j).

## Conclusion

For the reasons stated above, Eastlake's motion to reargue, and consequently its motion to dismiss the Rule 10b–5 claims alleged against it in the Third Party Complaint are denied.

It is so ordered.