**M.Z. DISCOUNT CLOTHING CORP., Plaintiff,**

v.

**Dr. Rita MEYNINGER, Director of Federal Emergency Management Agency, an agency of the United States Government, and Those Certain Underwriters at Lloyds' Issuing Policy Number L947020, Defendants.**

**No. CV 96–4828(RJD).**

United States District Court, E.D. New York.

Sept. 17, 1998.

Frank Winston, Wilkofsky, Friedman, Karel & Cummins, New York, NY, for M.Z. Discount Clothing Corp.

Zachary Carter, U.S. Attorney, Eastern District of New York by Leslie Brodsky, Asst. U.S. Attorney, Brooklyn, NY, for FEMA.

N. Jeffrey Brown, Caesar & Napoli, New York, NY, for Lloyds.

## MEMORANDUM & ORDER

DEARIE, District Judge.

The plaintiff, M.Z. Discount Clothing Corporation, ("M.Z.Discount") has moved for reargument pursuant to Local Rule 3(j) of this Court's decision of November 12, 1997. For the reasons given below, the motion to reargue is denied in part and granted in part.

### 1. *Prior Proceedings*

M.Z. Discount commenced this action to recover insurance policy proceeds arising out of a burglary. Defendant, Underwriters at Lloyds ("Lloyds") filed a motion to dismiss, which the Court, having relied on materials beyond the pleadings, treated as a motion for summary judgment. By an opinion dated November 12, 1997, this Court granted Lloyds' motion for summary judgment. M.Z. Discount filed this motion for reargument on December 1, 1997.

### 2. *The Facts*

On December 21, 1994, Lloyds issued M.Z. Discount an excess mercantile open stock burglary insurance policy. M.Z. Discount had obtained this insurance policy by contacting its insurance broker, Gheith Agency, Inc. ("Gheith"), who in turn contacted Morstan/LMG/Brisco Group Inc. ("Morstan") to place the risk. Morstan in turn, placed the risk with Insurance Innovators Agency ("Insurance Innovators"), Lloyds' authorized representative in the United States. Having placed the risk, Morstan issued a binder to M.Z.Discount. The Lloyds policy required M.Z. Discount: "immediately to report to [Insurance Innovators] any occurrence likely to result in a claim," and stated that, "failure by the insured to report the said loss or damage . . . shall invalidate any claim under this insurance."

On January 20, 1995 M.Z. Discount's store was allegedly burglarized. M.Z. Discount immediately retained a public adjuster, Federal Adjusters, Inc. ("Federal"). On January 25, having determined that the loss was in excess of the coverage provided by M.Z. Discount's primary insurer, Federal faxed a notice of loss to Morstan. On February 9, 1995 Federal sent a second fax to Morstan regarding M.Z. Discount's loss. This fax Morstan forwarded to Insurance Innovators, twenty days after the burglary occurred.[1]

### 3. *Standard for a Motion to Reargue*

■ To be entitled to reargument under Local Rule 3(j), the moving party must demonstrate that the Court overlooked controlling decisions or material factual matters that were before the Court on the underlying motion. *Violette v. Armonk Assoc.*, 823 F.Supp. 224, 226 (S.D.N.Y.1993); *Ades v. Deloitte & Touche*, 843 F.Supp. 888, 891 (S.D.N.Y.1994). The standard for review is strict, as the provision for reargument is not designed to allow wasteful repetition of arguments already briefed, considered and decided. *Morgan Guaranty Trust Co. v. Garrett Corp.*, 625 F. Supp. 752, 756 (S.D.N.Y.1986).

M.Z. Discount seeks reargument on the issue of whether there exists a legally recognized excuse for its failure to immediately notify Insurance Innovators of the burglary. In addition, M.Z. Discount draws the Court's attention to the fact that, at the time summary judgment was sought, M.Z. Discount had not had discovery of Morstan's records or files to ascertain whether Morstan had forwarded Federal's fax of January 25 to Insurance Innovators.

### 4. *Delay in Notification*

In granting Lloyd's motion for summary judgment, the Court held that timely notification of the wrong entity was not a legally recognizable excuse for delay in notifying the correct entity when the insurance policy required "immediate notification." On reargument, M.Z. Discount asserts that the Court overlooked *Universal Underwriters Insurance Co. v. Patriot Ambulette, Inc.*, 149 A.D.2d 500, 539 N.Y.S.2d 981 (1989) and *Mighty Midgets v. Centennial Ins. Co.*, 47 N.Y.2d 12, 416 N.Y.S.2d 559, 389 N.E.2d 1080.[2]

---

**1.** Gheith sent an Accord Form Loss Notice to Insurance Innovators on February 9, 1995.

**2.** Case law on the standard for reconsideration makes it clear that the Court must have overlooked decisions that were put before the Court on the underlying motion. *Ades*, 843 F.Supp. at 891. Although M.Z. Discount did not cite *Universal* or *Mighty Midgets* in its opposition to Lloyds' summary judgment motion, in the inter-

The insured in *Universal* owned three vehicles, two of which were covered by Liberty Mutual and one of which was covered by Universal. Universal's insurance policy required notification of any occurrence "as soon as practicable." Following an accident involving the vehicle covered by Universal, the insured notified its broker who then mistakenly notified Liberty Mutual. The error was not discovered and Universal was not provided with written notice of the accident until five months later. The Appellate Division held that under these circumstances the delay was not unreasonable as a matter of law.

Similarly, in *Mighty Midgets*, the insured, a non-profit manager of boys football teams, was covered by two policies: a liability policy provided by Centennial and an accident and health policy provided by Hartford Accident & Indemnity Company. Centennial's policy required notification "as soon as practicable." Following a game, a player was injured when a pot of boiling water used to cook hotdogs poured over him. The "unsophisticated" 21 year old president of Mighty Midgets called its broker, who misdirected him to notify Hartford. Hartford's coverage, however, was limited to accidents that occurred during a game. It was not until six months later, when Hartford rejected the claim brought by the injured person, that the mistake came to light, and notice was sent to Centennial. The Court of Appeals held that under these circumstances the delay was not unreasonable as a matter of law. *Id.* at 20, 389 N.E.2d at 1084, 416 N.Y.S.2d at 564.

■■■ This case is different. In the first place, Lloyds insurance policy requires that they be notified "immediately," not "as soon as practicable." The plaintiff would reduce these requirements to a single "within a reasonable time" standard. However, as noted in the Court's Opinion of November 12, 1997 *when the policy requires immediate notification*, a delay of more than 10 days is considered unreasonable. *Haas Tobacco Co. v. American Fidelity Co.*, 226 N.Y. 343, 123 N.E. 755 (1919). As noted by the court in *Mighty Midgets*:

"It is well settled that the phrase 'as soon as practicable' is an elastic one, not to be defined in a vacuum. By no means does it connote an ironbound requirement that notice be 'immediate' or 'prompt', relative as even those terms often are ..." *Mighty Midgets*, 47 N.Y.2d at 19, 389 N.E.2d at 1083, 416 N.Y.S.2d at 563.

In addition, there is no factual situation here that would excuse Federal's failure to notify Insurance Innovators immediately. M.Z. Discount had one excess insurance policy, a policy with Lloyds. Federal was not under the misapprehension that this policy was issued by Morstan, but was aware that it was issued by Lloyds. (Pl.Ex. 1, 2). The policy expressly stated that notification was to be given to Insurance Innovators. The plaintiff would have the Court read *Universal* and *Mighty Midgets* to hold that mistaken notification of any entity other than the insurer is a legally recognized excuse. This Court does not believe that New York case law supports this proposition. The plaintiff's motion to reargue based on *Universal Underwriters Insurance Co. v. Patriot Ambulette, Inc.* is denied.

5. *Discovery of Morstan*

■■ In opposition to Lloyds' motion for summary judgment, M.Z Discount argued that it had not yet had the opportunity for discovery of Morstan's records to determine if, in fact, Morstan did forward Federal's January 25th fax to Insurance Innovators. The Court, in its Opinion of November 12, did not address this issue, but stated that it was "undisputed that Morstan did not inform Lloyds of the claim, either directly or through Insurance Innovators, before Gheith notified Insurance Innovators on February 9, 1995." Given that Lloyds motion was originally brought as a motion to dismiss, and M.Z. Discount did not have an opportunity to ascertain whether Morstan forwarded the January 25th fax to Insurance Innovators, the Court's Order of November 12, 1997 is vacated for the limited purpose of allowing M.Z. Discount to discover from Morstan

est of correctly resolving this issue, the Court will

address these cases.

whether the January 25th fax was sent to Insurance Innovators.

SO ORDERED.