**In re CBI HOLDING COMPANY, INC., et al., Debtors,**

**Ernst & Young and Ernst & Young, LLP, Appellants,**

v.

**Bankruptcy Services, Inc., Appellee.**

Bankruptcy No. 94–B–438129 (BRL).

Adversary No. 01–CIV–0131 (KMW).

United States District Court, S.D. New York.

Oct. 25, 2004.

Andrew L. Frey, David Michael Hillman, Hector Gonzalez, Mayer Brown Rowe & Maw LLP, Harry Simeon Davis, Schulte Roth & Zabel LLP, New York City, for Appellants.

Arthur Steinberg, Jay G. Strum, Robert B. Bernstein, Kaye, Scholer, Fierman, Hays & Handler, L.L.P., New York City, for Appellee.

## ORDER

KIMBA M. WOOD, District Judge.

On June 26, 2004, this Court issued an Opinion & Order (the "June Order") resolving some, but not all, of the issues on appeal. The Court concluded, *inter alia*, that Ernst & Young and Ernst & Young, LLP (collectively, "Ernst & Young") were entitled to a jury trial with respect to the claims brought by Bankruptcy Services, Inc. ("BSI") on behalf of Trust Company of the West ("TCW") in its role as a creditor of CBI Holding Company, Inc. ("CBI"). The Court ordered the parties to provide additional briefing on the question of whether the Court's conclusion that Ernst & Young is entitled to a jury trial with respect to BSI's claims on behalf of TCW necessitates a new trial on BSI's claims on behalf of CBI as well. The Court indicated in the June Order that the resolution of that question would render moot some, if not all, of the outstanding issues on appeal.[1] The Court has received the parties' supplemental briefs on the jury trial question.

On July 8, 2004, Ernst & Young filed a motion for rehearing, in which Ernst &

---

1. BSI argues that the Court necessarily considered, and rejected, each of Ernst & Young's arguments on appeal, notwithstanding the fact that the Court explicitly reserved judgment with respect to those arguments. In light of the fact that the Court called for

Young asked the Court to reconsider two of its earlier holdings, and to rule on several additional issues that the Court left unresolved in the June Order.[2] That motion became fully briefed on August 13, 2004. For the reasons stated below, the Court grants the motion for rehearing, vacates in full the judgment of the United States Bankruptcy Court, and directs the Clerk of the Court to enter final judgment in favor of Ernst & Young.

Because the June Order addressed the factual and procedural background of this case in full, the Court will not repeat the history of this case.

## I. Standard on a Motion for Rehearing

■ When a party moves for reconsideration of a court order, Local Civil Rule 6.3 requires the movant to identify "the matters or controlling decisions which counsel believes the court has overlooked." Local Civil Rule 6.3. The standard for reconsideration is " 'strict in order to dissuade repetitive arguments in issues that have already been considered fully by the court.' " *Travelers Ins. Co. v. Buffalo Reinsurance Co.*, 739 F.Supp. 209, 211 (S.D.N.Y.1990) (quoting *Caleb & Co. v. E.I. DuPont de Nemours & Co.*, 624 F.Supp. 747, 748 (S.D.N.Y.1985)); *accord Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995). The Court does not, on a motion for reconsideration, reconsider arguments that it has already considered and rejected. *Travelers*, 739 F.Supp. at 211. This is so even if the Court considered but did not address, or did not address at length, a party's argument. *See Ades v. Deloitte & Touche*, 843 F.Supp. 888, 893 (S.D.N.Y.1994); *Market St. Ltd. Partners*

*v. Englander Capital Corp.*, No. 92 Civ. 7434(LMM), 1993 WL 276062, at *1 (S.D.N.Y. July 21, 1993). A motion for reconsideration "is not a substitute for appeal." *Morales v. Quintiles Transnational Corp.*, 25 F.Supp.2d 369, 372 (S.D.N.Y. 1998).

Ernst & Young asks the Court to reconsider only two of the Court's conclusions in the June Order: (1) the Court's conclusion that pursuant to Second Circuit law, BSI has standing to assert CBI's negligence and breach of contract claims, notwithstanding the fact that BSI may not have standing to assert CBI's fraud claims, *see* June Order, 41–46; and (2) the Court's conclusion that pursuant to Second Circuit law, BSI has standing to assert TCW's fraud claims, because "a claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors....", *see id.* at 46–47 (citing *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 120 (2d Cir.1991)). The remainder of Ernst & Young's arguments on the motion for rehearing urge the Court to rule on issues that the Court expressly declined to consider in the June Order. Thus, the Court applies the standard for a motion for reconsideration only with respect to the two claims that Ernst & Young is asking the Court to reconsider; the Court will consider the remaining arguments contained in the motion for rehearing on their own merits.

## II. Analysis

### A. BSI's Standing to Assert CBI's Fraud Claims Against Ernst & Young

■ In the June Order, the Court held that the fraudulent acts of certain mem-

---

additional briefing, the Court does not treat any of the issues not previously dealt with in the June Order as having been decided *sub silentio*.

2. On August 5, 2004, Ernst & Young also filed a motion authorizing the termination of the supersedeas bond in whole or in part. That motion became fully briefed on August 12, 2004.

bers of CBI's management will be imputed to CBI itself—and will consequently strip BSI of standing to assert CBI's fraud claims—unless the managers "totally abandoned" CBI's interests, and acted "entirely" for their own or another's interest (this exception is also referred to as the "adverse interest" exception). *See* June Order, 28–41 (discussing, *inter alia, Center v. Hampton Affiliates, Inc.,* 66 N.Y.2d 782, 785, 497 N.Y.S.2d 898, 488 N.E.2d 828 (1985); *Wight v. Bankamerica Corp.,* 219 F.3d 79, 87 (2d Cir.2000); and *In re Mediators, Inc.,* 105 F.3d 822, 827 (2d Cir. 1997)). Rather than immediately decide whether the "adverse interest" exception was properly applied by the Bankruptcy Court below, however, the Court deferred judgment on that question until after the Court resolved the issue of whether Ernst & Young was now entitled to a jury trial on these claims. *See* June Order, 34–35.

Ernst & Young argues that there is no evidence in the record to support the finding of "total abandonment," and thus that the Court need not decide the jury trial issue (*i.e.,* if the Court can conclude that there is insufficient evidence on the record for *any* trier of fact, whether it be the Bankruptcy Court below or some future jury, to conclude that CBI's managers "totally abandoned" CBI's interests, the Court need not decide whether a new trial is required). The Court agrees. Having reviewed the extensive record developed below, the Court finds that BSI has not met its burden of proving that CBI's managers "totally abandoned" CBI's interests when they committed their fraudulent acts.

BSI's claim that CBI's managers totally abandoned CBI's interests is premised on one exhibit and a portion of the testimony of Brian Mahoney, a former accounting supervisor at CBI. The exhibit upon which BSI relies is a vaguely worded schedule regarding the financial scenario that would need to occur "to reach 100 percent of bonus." DX 1018 (RE 1238).[3] The text of the exhibit was found by an Ernst & Young employee, on the computer used by John O'Brien, the former Controller of CBI. Although BSI and the Bankruptcy Court below treat this document as evidence of the intention of CBI's managers in defrauding the company,[4] Ernst & Young correctly points out here that the Bankruptcy Court declined to admit this document for that purpose, because the document was not authenticated. (RE 205). There is no testimony by O'Brien concerning the document; there is no indication of who created the document and for what purpose it was created. There is thus no basis to conclude that the document provides any evidence of O'Brien's intent in participating in the scheme to defraud CBI. The Mahoney testimony relied upon by BSI (but not the Bankruptcy Court below) to prove "total abandonment" is Mahoney's testimony that O'Brien told him that the "real reason" for failing to record liabilities and for overstating CBI's

---

**3.** References to "RE" are references to portions of the record in this action (the "Record Excerpts") submitted by Ernst & Young.

**4.** The Court notes that this is the only evidence relied upon by the Bankruptcy Court to support the finding of total abandonment. *See In re CBI Holding Co., Inc.,* 247 B.R. 341, 360 (Bkrtcy.S.D.N.Y.2000) (citing DX 1018 as support for the conclusion that "A principle [sic] reason why such members of CBI management caused liabilities to remain unrecorded at year-end was not for any corporate purpose but rather to ensure that Castello received the maximum possible bonus and remained in control.") As the Court explained in the June Order, oven this conclusion is insufficient to support a finding of total abandonment, because it is BSI's burden to prove that the defrauding managers of CBI had *no corporate purpose* for their acts of fraud, not that their *principal purpose* was personal.

income was to ensure that Castello received his maximum bonus. (RE 265). Even if Mahoney's testimony, which is clearly hearsay, were admissible as an exception to the hearsay rule, its probative value is slight, in view of Mahoney's testimony immediately thereafter that he had no way of knowing whether O'Brien had some other purpose in mind for failing to record liabilities. (RE 266). Because the central issue for analyzing "total abandonment" is whether the managers were *simultaneously* serving their own interests and the company's interests, Mahoney's testimony lacks probative value.

Although it is not Ernst & Young's burden to prove that BSI *lacks* standing to bring CBI's claims, it is worth noting by way of contrast that the record contains some evidence that various corporate purposes were served by the managers' acts of fraud, at least some of which were distinct from the issue of Castello's bonus. For instance, CBI's managers hid invoices and left certain liabilities unrecorded in order to give false representations of CBI's profitability to lending banks, without which CBI would have risked triggering an event of default. (RE 293, 295). The Court also agrees with Ernst & Young that an adverse inference ought to be drawn from the fact that BSI chose not to offer any testimony by Paul Rogers, CBI's former senior financial officer. Rogers was allegedly a central figure in the fraud, and he thus possessed first-hand knowledge about the "real reason(s)" for the fraud. His settlement agreement with the Official Committee of Unsecured Creditors of the Debtors, approved by the Bankruptcy Court below, included an agreement by Rogers "to cooperate and assist the Committee, TCW, and the Disbursing Agent in connection with any litigation or claim they may have against . . . any present or former professional person retained by the Debtors. This cooperation shall include without limitation testifying at any deposition or trial at the request of the Committee or TCW." (RE 808–09). The fact that BSI did not call Rogers to testify to the fact that CBI's managers had "totally abandoned" CBI's interests in conducting the fraud, and were serving only their own interests, thus warrants an adverse inference.

Having conducted a full review of the record on appeal, the Court concludes that BSI cannot meet its burden of proving that the defrauding managers of CBI "totally abandoned" CBI's interests, and acted "entirely" for their own or another's interest. The Court thus holds that BSI does not have standing to assert CBI's fraud claims, and reverses the portion of the Bankruptcy Court's decision below that holds otherwise.

### B. BSI's Standing to Assert CBI's Negligence and Breach of Contract Claims Against Ernst & Young

In the June Order, this Court concluded that regardless of whether BSI has standing to sue Ernst & Young for defrauding CBI, BSI has standing to assert CBI's negligence and breach of contract claims against Ernst & Young. The basis for the Court's conclusion was its determination that the allegations giving rise to CBI's negligence and breach of contract claims were "clearly distinct" from the allegations premised on management's fraud. The Court also noted that its decision was supported by New York's contributory negligence scheme.

Ernst & Young urges the Court to reconsider this holding, and to instead treat CBI's breach of contract, negligence, and fraud claims as "a single form of wrongdoing under different names" for purposes of the standing analysis. *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092

(2d Cir.1995) (citing *Cenco Inc. v. Seidman & Seidman,* 686 F.2d 449, 453 (7th Cir. 1982)). In the Court's June Order, the Court overlooked the fact that the *Hirsch* Court approved of the principle explained in *Cenco*.

Having reviewed the parties' briefs on appeal, the Court concludes that its earlier holding was in error. The factual allegations giving rise to CBI's negligence and breach of contract claims are virtually identical to the allegations giving rise to CBI's fraud claims; all of CBI's claims are premised on allegedly deficient auditing by Ernst & Young that failed to discover fraudulent acts committed by certain members of CBI's management.[5] The only difference among the claims is the legal rubric within which the same conduct will be analyzed (was the conduct (1) in breach of the contractual agreement between CBI and Ernst & Young, (2) negligent and in contravention of Generally Accepted Auditing Standards, and/or (3) reckless and/or fraudulent).[6] The claims assert "a single form of wrongdoing under different names" for purposes of the standing analysis.[7]

For the foregoing reasons, BSI lacks standing to assert CBI's breach of contract and negligence claims against Ernst & Young.

### C. BSI's Standing to Assert TCW's Fraud and Negligence Claims Against Ernst & Young

■ In the June Order, this Court concluded that BSI has standing to assert TCW's fraud claim against Ernst & Young, because "a claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors," June Order, 46–47 (quoting *Wagoner,* 944 F.2d at 120), and because TCW had assigned that claim to BSI pursuant to the First Amended Joint Plan of Reorganization of Creditors' Committee and Debtors. (RE 798(a)).

■ Ernst & Young argues in its motion for rehearing that the Court overlooked controlling law, which holds that a bankruptcy trustee does not have standing to assert claims against third parties on behalf of creditors of a corporation, even where the creditors assigned their claims to the trustee. *See In re Bennett Funding Group, Inc.,* 336 F.3d 94, 102 (2d Cir.2003) (" '[E]ven when defrauded creditors assigned to the trustee their claims against another for aiding and abetting the fraud

---

**5.** The parties do not dispute that certain members of CBI's management committed the fraudulent acts that Ernst & Young failed to uncover in its audits, and that those members of management knowingly and purposely deceived Ernst & Young by, *inter alia,* providing Ernst & Young with CBI Management Representation Letters prior to the issuance of the 1993 and 1994 audit reports, containing numerous known misrepresentations. (RE 118–123).

**6.** The fact that one of CBI's fraud claims arises out of the 1994 reaudit is immaterial; the Court previously noted that it is quite clear that the reaudit work was directly connected to Ernst & Young's 1993 and 1994 audits. *See* June Order, 18 n. 4.

**7.** In the June Order, the Court referred to New York's comparative negligence statute, and assumed that it provided some additional justification for treating CBI's negligence claims differently from the fraud and breach of contract Claims. *See* June Order, 45–46. The two are in fact distinct: the *Wagoner* standing rule circumscribes which parties may bring a suit; New York's comparative negligence statute governs the apportionment of damages between multiple liable parties. *See American Tissue, Inc. v. Donaldson, Lufkin & Jenrette Securities Corp.,* No. 03 Civ. 6913(GEL), 2004 WL 1794495, at *10 n. 16 (S.D.N.Y. Aug. 10, 2004); *American Tissue, Inc. v. Arthur Andersen, L.L.P.,* No. 02 Civ. 7751(SAS), 2003 WL 22909155, at *3–*4 (S.D.N.Y. Dec. 9, 2003).

the trustee lacked capacity to sue.' ") (quoting *Wagoner*, 944 F.2d at 118 (citing *Barnes v. Schatzkin*, 215 A.D. 10, 13, 212 N.Y.S. 536 (N.Y.App.Div.1925))). Although BSI is not a bankruptcy trustee, both the Bankruptcy Court below and this Court have treated BSI as analogous to a trustee, because both sue in the shoes of the bankrupt's estate. *See* June Order, 30 (citing *Wight v. Bankamerica Corp.*, 219 F.3d 79, 80 (2d Cir.2000)) (analogizing the position of the trustee to that of a party suing on behalf of the debtor); *In re Mediators, Inc.*, 105 F.3d 822, 826 (2d Cir.1997) (same). The parties do not challenge that analysis.

■ Ernst & Young is correct that *Barnes* is controlling law on this issue,[8] and that it holds that a bankruptcy trustee has standing to bring only those claims that could have been brought by the bankrupt prior to the inception of bankruptcy proceedings (*i.e.*, that a trustee does not have standing to bring claims belonging to creditors of the bankrupt corporation, notwithstanding the fact that those creditors assigned their claims to the trustee). *See Barnes*, 215 A.D. at 12, 212 N.Y.S. 536. *Barnes* has been consistently followed by the Second Circuit. *See, e.g., In re Bennett Funding Group, Inc.*, 336 F.3d at 102; *In re Mediators, Inc.*, 105 F.3d at 826; *Wagoner*, 944 F.2d at 118. Because BSI is analogous to a bankruptcy trustee, it does not have standing to bring any claims belonging to TCW, notwithstanding the fact that TCW assigned its claims to BSI.

### III. Conclusion

For the reasons stated above, the Court concludes that based upon the evidence in record, BSI does not have standing to bring CBI's fraud, negligence, and breach of contract claims. The Court also concludes that BSI does not have standing to bring TCW's fraud and negligence claims. Because CBI's claim for expungement of Ernst & Young's Proof of Claim is premised upon CBI's allegations of fraud, breach of contract, and negligence, CBI's expungement claim necessarily fails. The Court thus vacates the judgment of the Bankruptcy Court in full, and authorizes Ernst & Young to terminate the supersedeas bond that it posted to secure a stay of that judgment pending appeal.

The Court thus (1) GRANTS Ernst & Young's motion for rehearing [Document # 36]; (2) GRANTS Ernst & Young's motion for relief from the supersedeas bond [Document # 42]; (3) vacates in full the judgment entered by the Bankruptcy Court below; and (4) directs the Clerk of Court to enter final judgment in favor of Ernst & Young. The Clerk of the Court is directed to close this appeal. Any pending motions are moot.

SO ORDERED.

---

8. The Court notes that until Ernst & Young's motion for rehearing, none of the parties involved in this case, and neither the Bankruptcy Court below, nor this Court, addressed *Barnes*, and its clear implications for BSI's ability to bring claims assigned to it by TCW. Even in Ernst & Young's motion for rehearing, Ernst & Young argues only that this principle bars BSI's claim on behalf of TCW for *fraud,* and does not argue that this principle also bars BSI's claim on behalf of TCW for *negligence.* Nevertheless, because standing is jurisdictional, the Court must consider it on appeal, and must even consider it *sua sponte* once the issue arises. *See Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F.Supp.2d 289, 333 (S.D.N.Y.2003) (citing *Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77, 82 (2d Cir.1996)).