In re Mark Allan KOVLER and Elyse Hope Kovler, Debtors.

Bettijaine Gentry and Gentry Promotions, Inc., Plaintiffs,

v.

Mark Allan Kovler and Elyse Hope Kovler, Defendants.

Bankruptcy No. 98 B 20635(ASH). Adversary No. 98–5227A.

United States Bankruptcy Court, S.D. New York.

Sept. 7, 2000.

Curtis & Riess–Curtis, P.C., by Cheryl Riess–Curtis, W. Robert Curtis, New York City, for plaintiffs.

Kozupsky & Lebowitz, LLP, by Laurence J. Lebowitz, New York City, for debtors-defendants.

### SUPPLEMENTAL DECISION ON DAMAGES

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

In this adversary proceeding to determine liability for attorneys' fees under New York Debtor and Creditor Law ("D & CL") § 276–a and declare such liability nondischargeable under 11 U.S.C. § 523(a), this Court rendered a decision on the merits dated January 14, 2000 in favor of plaintiffs against debtors-defendants Mark and Elyse Kovler. *Gentry v. Kovler* (*In re Kovler*), 249 B.R. 238 (Bankr. S.D.N.Y.2000) (the "January 14 Decision"). Issues relating to damages were reserved for further submissions and an evidentiary hearing. The hearing was held and concluded on June 7 and July 21, 2000.

The following constitute the Court's findings of fact and conclusions of law after trial under Bankruptcy Rule 7052. To avoid unnecessary repetition, this decision will be deemed a supplement to, part of and to be read in conjunction with the Court's January 14 Decision.

### The Lurie Claim

In accordance with the January 14 Decision, plaintiffs are entitled to recover $1,000 in respect of the Lurie Claim. Section 487 of the New York Judiciary Law provides as follows in pertinent part:

An attorney or counselor who:

\* \* \*

2. ... wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for,

Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

Mark Kovler did not contest the Lurie Claim that in connection with a real estate transaction in which he was acting as attorney for Linda Lurie he received $1,000 of Lurie's money which he never accounted for or returned to her. Mark has not contested plaintiffs' entitlement to treble damages under Section 487 of the Judiciary Law in respect of the Lurie Claim.

Since he received and held the $1,000 as an attorney and fiduciary for Lurie and refused to return or account for the money, plaintiffs, as Lurie's assignees, are entitled to judgment against Mark Kovler for treble damages pursuant to Section 487 of the Judiciary Law. *See* Section G.a., below, concerning pre-judgment interest.

### The Fraudulent Conveyance Claim

D & CL § 276–a provides for "Attorneys' fees in an action or special proceeding to set aside a conveyance made with intent to defraud" (heading). Having discovered the fact of Mark's conveyance to Elyse of his interest in their jointly-owned

residential real property after commencement of the District Court Action against Mark for malpractice, plaintiffs amended their complaint to add Elyse as a defendant and to assert claims for reconveyance of the property and for attorneys' fees under D & CL §§ 276 and 276–a against both defendants. On July 30, 1997, the day before their first filing in the Bankruptcy Court, the Kovlers effected a reconveyance of Mark's joint interest in the property from Elyse to Mark (the "July 30 Reconveyance"). The Kovlers' bankruptcy automatically stayed the District Court Action. After dismissal of the Kovlers' Chapter 13 case and filing of their Chapter 7 case, the plaintiffs timely filed this adversary proceeding to determine the dischargeability of all of plaintiffs' claims against the Kovlers. Plaintiffs' fraudulent conveyance claims initiated in the District Court Action were eventually litigated as to both liability and dischargeability in this Court. Since the July 30 Reconveyance occurred the day before the Kovlers' first filing in the Bankruptcy Court, plaintiffs' fraudulent conveyance claim proceeded in this Court solely as a claim for damages for attorneys' fees [1] under D & CL § 276–a.

Plaintiffs seek as damages all legal expenses which they claim they incurred in prosecuting the fraudulent conveyance claim to a successful conclusion, consisting of attorneys' fees in the amount of $177,353.75 and out-of-pocket costs in the amount of $18,909.82. They also seek prejudgment interest at the New York statutory rate over the time from which the fees and costs were incurred and punitive damages in the amount of treble damages under Judiciary Law § 487(1).

In their Damages Hearing Memorandum and in oral argument at the hearing, defendants have contested plaintiffs' damage claims on a number of different

grounds, each of which will be separately considered.

## A. *Plaintiffs' status as a "creditor"*

■ The opening clause of D & CL § 276–a recites "In an action ... brought by a *creditor* ..." (emphasis supplied). Since plaintiffs never became a judgment creditor of Mark Kovler on their underlying claims against Mark for malpractice in the District Court Action, the Kovlers argue that plaintiffs did not have standing to assert a claim under Section 276–a. The argument is refuted by the statute. The term "creditor" is defined in D & CL § 270 as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." The operative statutory provision here, Section 276, which provides the predicate for an award of attorneys' fees under Section 276–a, declares that every conveyance made with actual intent to defraud "is fraudulent as to *both present and future creditors*" (emphasis supplied). As stated by the Supreme Court in *Lazar v. Towne House Restaurant Corp.*, 142 N.Y.S.2d 315, 321 (N.Y.Sup.Ct.1955), *aff'd* 5 A.D.2d 794, 171 N.Y.S.2d 334 (2d Dep't 1958), *aff'd* 6 N.Y.2d 923, 190 N.Y.S.2d 997, 161 N.E.2d 211 (1959), where the intent to defraud was actual and affirmative, "the exact status of the plaintiff, at the time of the acts complained of or any of them, is immaterial." I decline to follow *Rentz v. Brodsky*, 174 Misc. 554, 20 N.Y.S.2d 65 (1940), relied upon by defendants, because the conclusion apparently reached there cannot be reconciled with the express provisions of the statute, which are binding on this Court.

The fact that plaintiffs apparently have not pursued their original malpractice claims against Mark Kovler asserted in the District Court Action after this Court ruled in December 1998 that those claims were dischargeable does not fortify defen-

---

**1.** It appears that plaintiffs had already incurred some $47,000 in attorneys' fees before the July 30 Reconveyance.

dants' argument. By the time plaintiffs apparently decided not to pursue the malpractice claims by reason of this Court's December 1998 ruling on dischargeability of those claims, plaintiffs had long had standing as a "creditor" under Section 276–a itself and, of course, by reason of the Lurie Claim.

## B. *Arguments based on the July 30 Reconveyance*

Eliminating statutory language not relevant to defendants' argument, Section 276–a provides:

> In an action ... brought by a creditor ... to set aside a conveyance by debtor [based on actual intent to defraud] ... in which action ... the creditor ... shall recover judgment ... the creditor ... shall have judgment [for the reasonable attorneys' fees of the creditor in such action] against the debtor ... in addition to the other relief granted by the judgment.

Based on this statutory language, defendants argue that:

> ... a condition precedent to being awarded attorneys' fees under this section is that the creditor "recover judgment" against the debtor and transferee. Indeed, the language of the statute presumes as much when it provides that upon the proper showing legal fees are to be awarded "in addition to the other relief granted by the judgment."

(Defendants' Damages Hearing Memorandum at 4). Although imperfectly expressed, the argument on its face seems to be that a particular kind of judgment—to wit, a judgment setting aside a conveyance—is a "condition precedent" to a judgment for attorneys' fees.

■ If this "condition precedent" interpretation of the statute were valid, it would deprive plaintiffs in this case of *any* award of attorneys' fees under Section 276–a, since the July 30 Reconveyance mooted the claim for reconveyance, thereby assuring that there would be no actual judgment for reconveyance. Such an interpretation would completely undermine the purpose of Section 276–a. The predicate statute, Section 276, is concerned with willful, fraudulent conduct intended to defraud present and future creditors. Section 276–a provides the remedy—an action or special proceeding to set aside the conveyance. But the Legislature obviously recognized that actual fraud may be difficult and costly to prove, that the expense would likely deter creditors from bringing such litigation and that a creditor who successfully prosecuted such an action would be materially harmed by the litigation cost of success. To provide meaningful relief to present or future creditors harmed by a willful, fraudulent conveyance, the Legislature mandated the additional remedy of an award of attorneys' fees in Section 276–a. The award of attorneys' fees provided for in Section 276–a is not a "penalty" as suggested by defendants (Damages Hearing Memorandum at 5); it is compensatory in nature, designed to make creditors whole not only by compelling reconveyance but by reimbursing creditors for the litigation costs incurred in rectifying the debtor's fraud.

■ The "condition precedent" interpretation suggested in the above-quoted portion of defendants' Damages Hearing Memorandum would enable the defrauding debtor and his transferee to eviscerate the compensatory statutory objective of Section 276–a by the simple expedient of effecting a voluntary reconveyance, perhaps on the very eve of trial, or even during or after trial but before verdict and judgment, after a creditor had expended tens or hundreds of thousands of dollars to establish the debtor's willful fraud. Lacking any legal precedent or rational basis to do so, I decline to construe the statute in such a manner as to enable the wrongdoer, at his sole election, to nullify the remedial purpose of Section 276–a.. Contrary to defendants' contention, there is nothing in the structure or language of the statute which compels the conclusion that there

cannot be a judgment for attorneys' fees unless there is also a judgment for reconveyance. It is true that the statute provides for and contemplates a judgment of reconveyance, as well as for attorneys' fees. But there is nothing in the statutory language or the legislative history to suggest that the New York Legislature intended or contemplated that a defrauding debtor, faced with a near certainty of an adverse judgment at trial after forcing a creditor to incur substantial litigation costs, could avoid liability for attorneys' fees simply by belatedly capitulating on the reconveyance issue.

■ Recognizing that Section 276–a would be emasculated by requiring a reconveyance judgment as a condition precedent to a judgment for attorneys' fees, defendants concede that plaintiffs are entitled to some award of attorneys' fees. "Given this Court's January 14th Decision, there is no dispute at this juncture that Plaintiffs are entitled to an award of attorneys' fees" (Defendants' Damages Hearing Memorandum at 4); "Defendants do not dispute the Plaintiffs' right to recoup some of the legal fees which they incurred" (*id.* at 5). As to the quantum, it is defendants' contention that plaintiffs may recover under Section 276–a only those attorneys' fees incurred up to the date of the July 30 Reconveyance, which defendants assert is approximately $47,000. Once again, I must reject defendants' argument because it conflicts with both the express language and the remedial and prophylactic objectives of the statute.

Section 276–a establishes a creditor's right to bring an action for two specified forms of relief—to set aside a conveyance, and to recover the legal costs of prosecuting the action to judgment. Both forms of relief require proof at trial that "such conveyance [was] made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors." Proof of actual intent to defraud is the central

element of an action under Section 276–a. Even if the defendants elect to reconvey the property, the creditor must still prove actual intent to defraud to obtain the judgment for attorneys' fees which is his statutory right. Where actual intent is proved the creditor is entitled to recover judgment, and the trial judge "*shall* fix the reasonable attorneys' fees of the creditor" and the creditor "*shall* have judgment therefor" (emphasis supplied). Nothing in the statute can be read to deprive a creditor who has brought an action and proved actual intent to defraud under Section 276–a of his express statutory entitlement to a judgment for the full amount of the attorneys' fees necessarily expended to obtain that judgment. The legislative objective in enacting Section 276–a was to make whole the creditor who is forced to expend resources to bring a lawsuit by shifting the legal costs of the action to the debtor whose fraud has necessitated the litigation. That remedial objective (which is also a deterrent to such misconduct) is undermined to the extent that the defrauding debtor can unilaterally shift back to the creditor either all or a portion of the legal costs which the creditor must incur in order to obtain a judgment based on the debtor's willful and intentional fraud.

Of course, actual intent to defraud is difficult to prove, and the creditor bears the risk that he may fail in the endeavor. But if a creditor brings such an action, prosecutes that action through discovery, pretrial proceedings and a trial on the merits, and proves that the debtor and the transferee acted with actual intent to defraud, the statute expressly mandates that the creditor "shall have judgment" for "reasonable attorneys' fees." The defrauding debtor and transferee cannot unilaterally cut off or reduce the creditor's right to a judgment for attorneys' fees by simply undoing the fraudulent conveyance after the creditor has expended substantial legal costs in the action.

Defendants make the following cryptic assertion (Damages Hearing Memorandum at 5):

> That the issue of intent may remain to be established if the creditor is to recoup any fees is not relevant, and indeed, rendered moot by the language of the statute, once the conveyance is reversed. The remedial aspect of the statute having been accomplished, it is for the creditor to then decide whether pursuing the matter to recoup fees incurred is a worthwhile and cost effective exercise.

All of these contentions are wide of the mark. Taking the last first, Section 276-a provides not one but two remedies for fraudulent conveyance—reconveyance, and recovery of the creditor's legal fees in the action. The unilateral act of the defendants in voluntarily reconveying moots one form of relief provided by the statute, *but not the other*. Thus, only one "remedial aspect of the statute" is accomplished by a reconveyance; the other remains to be litigated. The "issue of intent" does indeed "remain to be established if the creditor is to recoup any fees"; that issue remains relevant, indeed, essential, to the litigation and is not "rendered moot" once the conveyance is reversed.

Defendants' plaint that a contrary ruling "would never allow a defendant in a fraudulent conveyance to ameliorate their alleged wrongdoing short of a trial to verdict" (Damages Hearing Memorandum at 5) ignores the obvious fact that defendants in a fraudulent conveyance action can always ameliorate their exposure under Section 276-a by not only reconveying the property but also by tendering payment for legal fees incurred to date, so as to terminate any further exposure to damages for legal fees. In this case, defendants capitulated on July 30, 1997, but only half way. Their exposure in the fraudulent conveyance action under Section 276-a was a potential judgment for reconveyance *and* for attorneys' fees. The Kovlers capitulated on the reconveyance. But they did

not acknowledge any portion of plaintiffs' statutory claim to attorneys' fees, and they forced plaintiffs to extensive and costly litigation through trial in order to establish their right to a judgment for attorneys' fees. Defendants could have ameliorated their exposure to damages in July 1997, but they chose not to. Of course, defendants had the right to force a trial on their liability for attorneys' fees, but the inevitable consequence of exercising that right was to increase the attorneys' fees necessarily expended by plaintiffs to obtain their judgment.

Litigation is risky business. The plaintiffs' risk in commencing and proceeding through trial on their fraudulent conveyance claim was that they might fail to prove actual intent to defraud. The defendants' risk in forcing plaintiffs to litigate through a trial was their exposure to plaintiffs' statutory right to recover attorneys' fees incurred in the action, an exposure which increased in magnitude with every hour expended by plaintiffs' attorneys in their quest for judgment. Defendants had the advantage in the litigation gamble, because they had full knowledge of the facts concerning their own conduct from the outset, whereas plaintiffs had to discover the evidence through protracted, obstructed and costly discovery proceedings and they had the burden of presenting the evidence effectively at trial. Perhaps defendants persisted in defense of this litigation in the hope that plaintiffs would not uncover all of the evidence, or would not be able to effectively present the evidence at trial, or that the Court would somehow view the evidence in a different light. They were wrong. Although they chose to voluntarily moot one of the statutory remedies under Section 276-a by reversing the fraudulent conveyance, defendants had the Constitutional, due process right to continue to defend against any liability on the other remedy for attorneys' fees provided by Section 276-a. But they did so at the risk of increasing the damages to which

the plaintiffs would be entitled under the statute if the plaintiffs prevailed.

Having established actual intent to defraud on the part of both defendants, the plaintiffs will be awarded the full statutory remedy of the attorneys' fees incurred by them to establish their claim under the statute.

## C. *The dischargeability issue*

In support of their argument that the attorneys' fees recoverable under D & CL § 276–a should be limited to those incurred prior to the July 30 Reconveyance, defendants argue that this adversary proceeding was brought to determine the dischargeability of plaintiffs' claims against defendants, and D & CL § 276–a does not provide for a fee shifting with respect to dischargeability litigation. The argument is well-founded, but only to a point.

Plaintiffs are not entitled to recover any fees expended on the question of dischargeability of any of plaintiffs' claims under 11 U.S.C. § 523(a). However, plaintiffs are entitled to recover their reasonable legal fees for obtaining a judgment for fraudulent conveyance under D & CL § 276–a. As was their right, plaintiffs litigated their substantive fraudulent conveyance claim under D & CL § 276–a in this adversary proceeding, and their statutory right to attorneys' fees for doing so exists no less in this Court than if the claim had been litigated through trial and a judgment in the District Court Action.

The fact that the evidence at trial and the resulting findings of fact and conclusions of law respecting plaintiffs' substantive fraudulent conveyance claim under D & CL § 276–a also happen to be relevant to or even dispositive of the determination of dischargeability under Section 523(a) cannot deprive plaintiffs of their damage remedy under D & CL § 276–a. Attorneys' fees necessary to prove actual fraud are no less recoverable under Section 276–a because the proof also bears upon dischargeability.

In performing the damage assessment in Section E and the Appendix, the Court has allowed all those attorneys' fees expended in appropriate pursuance of the fraudulent conveyance claim, and has disallowed legal fees relating particularly to dischargeability issues under Section 523(a).

## D. *Other guidelines relating to the quantum of fees allowable*

Pointing out that neither of plaintiffs' attorneys had any previous significant bankruptcy experience and neither had litigated a case through a full trial to verdict, defendants argue, in substance, that they should not be required to pay as damages attorneys' fees incurred to support counsel's "learning curve." Defendants further argue that the time expended by plaintiffs' counsel was excessive or disproportionate to the work required, and also that many of the tasks performed by plaintiffs' attorneys at their senior billing rates could have been carried out by more junior lawyers or legal assistants.

With respect to the experience levels of plaintiffs' counsel, it was the observation of this Court that both of the plaintiffs' attorneys are experienced, knowledgeable, skilled, efficient and effective professionals. Despite defendants' continuing and well-documented tactics of procedural and substantive obstruction, both in the District Court and this Court, plaintiffs' counsel managed to discover and document defendants' fraudulent conduct and present the evidence in an effective and comprehensible manner. In short, the performance of plaintiffs' counsel was highly professional and commendable in every respect.

That said, the general objections, or better said, guidelines articulated by defendants as recited above are entirely valid in the process of determining what are "reasonable attorneys' fees" within the meaning of the statute. So also are defendants' guidelines with respect to various specific components of plaintiffs' claim for attorneys' fees. To be precise, defendants are

correct in asserting that plaintiffs' legal fees, however reasonable in amount, may not be assessed under D & CL § 276–a for any legal work other than that undertaken in pursuance of establishing the fraudulent conveyance claim. All of these considerations and others have been taken into account by the Court in performing the analysis summarized in Section E and set forth in the Appendix to this decision.

### E. *Award of legal fees*

Summaries of the legal charges for which plaintiffs seek recovery in this adversary proceeding are set forth month by month in the table at pages 4–7 of Plaintiffs' Damages Hearing Memorandum ("Plaintiffs' Damages Table"). Defendants' specific objections to these charges are set forth at pages 8–13 of Defendants' Damages Hearing Memorandum. Many of the charges claimed by plaintiffs have not been objected to or have only partially been objected to by defendants.

All of the charges set forth in Plaintiffs' Damages Table are documented by the billing records of plaintiffs' counsel and counsel's statements of services rendered to the plaintiffs. The billing records and statements are contained in Exhibits 71 and 71A.

For every charge summarized in Plaintiffs' Damages Table the Court has examined the billing records and statements of services contained in Exhibits 71 and 71A, whether defendants objected to particular charges or not. In the case of every objection by defendants, and in other cases deemed appropriate by the Court, the Court examined the exhibits received in evidence at the damages hearing and considered the testimony of plaintiffs' counsel in support of their application.

The results of the Court's examination are set forth in the Appendix which is

attached to this decision but will be omitted from the decision as published. For the reasons set forth in the "Explanation" column of the Appendix, plaintiffs will be awarded judgment for $118,365 in legal fees under D & CL § 276–a.

### Other Issues

### F. *Costs*

■ In addition to attorneys' fees, plaintiffs seek costs (out-of-pocket disbursements) in the amount of $18,909.82. Defendants object that "no statutory authority exists" (Damages Hearing Memorandum at 2) for such costs, and indeed Section 276–a refers to "attorneys' fees" with no mention of "costs."

Plaintiffs do not address the issue at all in their reply memorandum on damages. The only reference to the point in plaintiffs' initial Damages Hearing Memorandum appears in a footnote on page 4 as follows:

> Although not expressly addressed by DCL § 276–a, litigation expenses are recognized as recoverable in proceedings to redress a fraudulent conveyance. *See* 37 Am.Jur.2d *Fraudulent Conveyances* § 231.

However, review of this reference and citations found therein provides little, if any, support for recovery. While the title of Section 231 is "Allowance of Attorneys' Fees and Litigation Expenses," the text following and New York citations referenced therein only support a possible finding for attorneys' fees and provide no support for plaintiffs' proposition that "litigation expenses" are recoverable against the defendants.

In addition, the term "costs" has its own meaning. The Civil Practice Law and Rules of New York ("CPLR") clearly defines what types of costs are recoverable. *See* the CPLR Articles 82 and 83 [2]. There

---

**2.** CPLR Articles 82 and 83 explicitly govern costs awarded in actions brought in the State of New York. The pertinent provisions provide:

§ 8201. Amount of costs in an action.
Costs awarded in an action shall be in the amount of:

is no reason to assume that the Legislature intended to include costs when a statute provides for "attorneys' fees" or vice versa. It is entirely possible for the Legislature to specify in statutes "attorneys' fees and costs" if that is what is intended. Accordingly, I reject plaintiffs' claim for $18,909 of "costs" where the statute only provides for "attorneys' fees."

### G. *Interest*

#### a. *The Lurie Claim*

Article 50 of the CPLR provides for what is commonly referred to as "prejudgment" interest in two stages: (1) interest up to the time of the "verdict, report or decision" under CPLR 5001, and (2) mandatory interest during the time between the verdict, report or decision and the "date of entry of final judgment" under CPLR 5002. CPLR 5004 sets the rate of interest at 9% per annum, unless otherwise provided by statute. CPLR 5003 is the provision which mandates post-judgment interest.

Pre-verdict, report or decision interest is mandatory under 5001(a) where a sum has been awarded "because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property." The second clause of CPLR 5001(a) provides a different rule for "an action of an equitable nature," whereby "interest and the rate and date from which it shall be computed shall be in the court's discretion." CPLR 5001(b) requires the interest to be computed "from the earliest ascertainable date the cause of action existed . . . ."

■ The Lurie Claim was essentially one for breach of contract. Therefore, pre-decision (the January 14 Decision) interest on that claim is mandatory under CPLR 5001 and will be awarded. *See Lewis v. S.L. & E., Inc.*, 831 F.2d 37, 39 (2d Cir.1987) ("[E]ven on a claim with equitable underpinnings, such as one for breach of fiduciary duty, prejudgment interest would be mandatory where the only relief sought was compensatory damages."). Lacking evidence of an earlier date, the "earliest ascertainable date" for computation of interest would be the date when the initial complaint including the Lurie Claim was served on Mark Kovler. In addition, under CPLR 5002 Lurie is entitled to interest for the period between the January 14 Decision and the final judgment.

■ Since pre-judgment interest is an integral part of the compensatory award on the Lurie Claim, it is the entire amount ($1,000 principal plus pre-judgment interest) which must be trebled pursuant to Section 487 of the Judiciary Law. *See Burton v. Kaplan* 184 A.D.2d 408, 585 N.Y.S.2d 359 (1st Dep't 1992) (under Judiciary Law § 487, attorney who committed malpractice, conversion, and breach of contract was required to pay damages, including pre-judgment interest, and that award was properly trebled).

The award of pre-judgment interest trebled on the Lurie Claim is mandated by statute and is equitable in result on the facts here. Mark Kovler refused to return or otherwise account for $1,000 he held for Lurie as a fiduciary. Mark failed to give any reason or excuse for his failure to

---

1. two hundred dollars for all proceedings before a note of issue is filed; plus
2. two hundred dollars for all proceedings after a note of issue is filed and before trial; plus
3. three hundred dollars for each trial, inquest or assessment of damages.
§ 8303. Additional allowance in the discretion of the court.
 (a) Discretionary allowance in action. Whether or not costs have been awarded,

the court before which the trial was had, or in which judgment was entered, on motion, may award:
 \*\*\*
 2. to any party to a difficult or extraordinary case, where a defense has been interposed, a sum not exceeding five per cent of the sum recovered or claimed, or of the value of the subject matter involved, and not exceeding the sum of three thousand dollars . . . .

return the money, and from at least the time the complaint was served, his retention of Lurie's money was utterly without justification. When Mark received the complaint, he had sufficient notice of his obligation to return Lurie's money forthwith. Instead, he has retained the money to this day, although he offered no defense to the claim at trial.

**b. *Interest on the award of legal fees***

 The wording of D & CL § 276–a, providing for payment of "reasonable attorney's fees" to the party that successfully brings an action to set aside a conveyance made with actual intent to defraud, cannot be read to allow for payment of pre-decision interest on those fees.

 Section 276–a is a statutory exception to the "American Rule," which requires each party to bear its own legal fees. *See e.g., Mighty Midgets, Inc. v. Centennial Insurance Co.*, 47 N.Y.2d 12, 22, 389 N.E.2d 1080, 416 N.Y.S.2d 559 (1979). "Under the general rule, attorneys' fees and disbursements are incidents of litigation and the prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties or by statute or court rule." *A.G. Ship Maintenance Corp. v. Lezak*, 69 N.Y.2d 1, 5, 503 N.E.2d 681, 511 N.Y.S.2d 216 (1986). "The rule is based upon the high priority accorded free access to the courts and a desire to avoid placing barriers in the way of those desiring judicial redress of wrongs." *Id.* The courts have enforced this rule as "an implicit legislative judgment regarding the allocation of legal fees."

The formula the New York Court of Appeals declared to be "just about ... universal ... in American practice" for setting legal fees considers the following factors: "time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented; the lawyer's experience, ability and reputation; the amount involved and benefit resulting to the client from the services; the customary fee charged by the Bar for similar services; the contingency or certainty of compensation; the results obtained; and the responsibility involved." *Matter of Freeman*, 34 N.Y.2d 1, 9, 311 N.E.2d 480, 355 N.Y.S.2d 336 (1974); *see also Dillon v. Dean*, 256 A.D.2d 436, 682 N.Y.S.2d 78 (2d Dep't 1998) (applying the same formula to D & CL § 276–a). No consideration is given to pre-decision interest.

 Section 276–a, as an exception to a rule which is steeped in public policy, should not be read expansively. Because Section 276–a makes no provision for pre-decision interest on legal fees, and because pre-decision interest is not one of the components considered in calculating an award of legal fees under New York law, plaintiffs are not entitled to pre-decision interest on the legal fees they have been awarded.

 However, on their award of $118,365, plaintiffs are entitled to statutory interest from the January 14 Decision. CPLR 5002 states:

> Interest *shall* be recovered upon the total sum awarded, including interest to verdict, report or decision, in any action, from the date the verdict was rendered or the report or decision was made to the date of entry of final judgment.

(emphasis supplied). The language of CPLR 5002 is mandatory and, in contrast to CPLR 5001, applies in any action once liability has been determined by verdict or decision, whether the origins of the action were in law, equity or the pursuit of legal fees under D & CL § 276–a.

**H. *Punitive damages***

 Plaintiffs seek as punitive damages triple the amount awarded as compensatory damages (the attorneys' fees) based upon Section 487 of the New York Judiciary Law, concerning fraud and deceit of an attorney in a legal proceeding. Section 487 provides, in pertinent part:

> An attorney or counselor who:

3. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; ...

\* \* \*

Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

Although not briefed by the parties, it is my conclusion that Judiciary Law § 487 is not applicable here. Case law makes it clear that Section 487 can only be invoked in cases of deceit or collusion by an attorney while acting in his/her capacity as an attorney. *See Northern Trust Bank of Florida/Sarasota v. Coleman*, 632 F.Supp. 648, 650 (S.D.N.Y.1986) ("Section 487 is aimed at actions by an attorney in his or her role as an attorney. The mere fact that a wrongdoer is an attorney is insufficient to impose liability for treble damages under section 487"); *Haber v. Kisner*, 255 A.D.2d 223, 223, 680 N.Y.S.2d 233, 234 (1998) ("The second cause of action based on Judiciary Law § 487 was properly dismissed since defendant was sued in the foreclosure action as trustee [not as an attorney], and responded in that capacity"); *216 Garage, Inc. v. Roth*, 12 Misc.2d 1081, 1082, 174 N.Y.S.2d 478, 479 (Sup.Ct., N.Y.Co., Special Term, Part III, 1958) ("Penal Law, section 273 [prior statute to Judiciary Law § 487], refers to transactions had by attorneys as attorneys. It does not purport to put an extra liability on a person sued merely because he happens to be admitted to the bar"); *Hyams v. Mehlman*, 148 A.D.2d 586, 540 N.Y.S.2d 191 (1989) ("At bar, the plaintiff was acting as the attorney for the Federal Deposit Insurance Corporation when he negotiated the escrow arrangement at issue in this case. Consequently, a violation of Judiciary Law § 487 may be asserted as a legitimate counterclaim"); *People of the State of New York v. Canale*, 240 A.D.2d 839, 841, 658 N.Y.S.2d 715, 717 (1997) (dicta) ("In these civil actions, courts have generally held that this section is limited to actions by an attorney acting in his or her capacity as an attorney and the mere fact that a wrongdoer is an attorney is insufficient to impose liability").

While the malpractice suit brought by the plaintiffs involved activity by Mark Kovler acting in his capacity as an attorney, this adversary proceeding included Mark's conduct both as attorney and outside his capacity as attorney. The fraudulent conveyance claim based on the transfer from Mark to his wife involved no activity by Mark *as attorney* on behalf of the plaintiffs. Accordingly, Section 487 is not applicable to the fraudulent conveyance claim.

By contrast, the Lurie Claim involved the unlawful retention of monies held by Mark as attorney for the plaintiffs relating to a real estate transaction. Accordingly, Section 487 is applicable to that claim.

■ Plaintiffs also argue that punitive damages should be awarded on the D & CL § 276–a claim because of the "gross moral culpability of the defendants," not simply in effecting a fraudulent conveyance "but doing so through the creation of false evidence, perjury, and the suborning of false jurats" (Plaintiffs' Damages Hearing Memorandum at 8). They assert that "[p]unitive damages may be awarded in fraudulent conveyance claims when this standard is met," citing *Blakeslee v. Rabinor*, 182 A.D.2d 390, 392, 582 N.Y.S.2d 132, 134 (1st Dep't 1992). *Id.*

In opposition, defendants argue that "[w]hile punitive damages may be awarded in fraud cases, it is well settled that 'the act of removing property from the reach of a creditor is not misconduct so "gross and wanton" to justify an award of punitive damages,'" citing *Blakeslee, supra; Key Bank v. Diamond*, 203 A.D.2d 896, 611 N.Y.S.2d 382 (4th Dep't 1994); *Marine Midland Bank v. Murkoff*, 120 A.D.2d 122, 508 N.Y.S.2d 17 (2d Dep't 1986). But defendants miss the point in making this

argument. The punitive damage claim is not based simply upon intentional fraudulent conveyance, but upon all of the other misconduct involved in connection with defendants' fabrication of evidence, perjury during the lawsuit and at trial and subornation of false or improper notarizations by both notaries public.

Under the facts established in this case I find that the defendants' conduct was of such culpability as to fully meet the standard for punitive damages expressed in *Blakeslee v. Rabinor,* 182 A.D.2d at 392, 582 N.Y.S.2d 132. See also *Keen v. Keen,* 113 A.D.2d 964, 966, 493 N.Y.S.2d 636 (1985), *appeal dismissed,* 67 N.Y.2d 646, 499 N.Y.S.2d 683, 490 N.E.2d 550 (1986). Indeed, the record established at trial, as found in the January 14 Decision, would merit a substantial award of exemplary damages.

However, the Court is mindful of the fact that these defendants as debtors have recently emerged from a Chapter 7 case. They are a married couple with two minor children to support. Plaintiffs' nondischargeable judgment, even without any punitive damage award, will be a severe economic burden on the defendants for years. This controversy is a sad example of a bad mistake in judgment compounded by calculated misconduct, with disastrous financial consequences out of all proportion to Mark's initial equity in the family home which he sought to insulate from creditors.

Under the circumstances, I have concluded that a modest "punitive" damage award of $25,000 is appropriate. The rationale for this amount is derived from two components: $15,000 in lieu of plaintiffs' rejected claim for costs, and $10,000 in lieu of plaintiffs' rejected claim for prejudgment interest on the claim for attorneys' fees. As such, the "punitive" damage award in no way constitutes a windfall for plaintiffs, but rather is compensatory in nature, albeit in an amount less than that which would make plaintiffs whole in respect of either their litigation costs or the time value of money on the legal fees.

### I. *Legal costs of the damages hearing*

As noted above, it is this Court's view that the remedial purpose of D & CL § 276–a was to shift to the defrauding defendants-debtor and -transferee the attorneys' fees incurred by the creditor in establishing the defendants' liability for fraudulent conveyance.

The question presented in the damage hearing is different. The issue here is whether the statute also was intended to shift to the defendant the plaintiff-creditor's legal fees incurred in the further and different controversy to determine the "reasonable" amount of the legal fees owed by the creditor to his attorney in connection with the fraudulent conveyance litigation. It is true that this latter controversy—the damages hearing—must be held and resolved in order to enter a final, appealable judgment in an action under D & CL § 276–a. But the damages hearing is a fundamentally different type of controversy from the fraudulent conveyance action. The damages hearing may be viewed as a determination of the creditor's liability to his own attorney in respect of the attorney's services rendered on one particular aspect of the attorney's overall services to the creditor, to wit, services relating solely to the fraudulent conveyance claim. That determination of liability and entitlement as between the creditor and his own attorney is not the controversy which was the target of the remedial fee shifting provided in D & CL § 276–a.

Accordingly, the Court concludes that plaintiffs are not entitled to an award of their attorneys' fees in the damages phase of this adversary proceeding.

### Conclusion

Plaintiffs' counsel is directed to settle a final order and judgment on liability and damages consistent with the January 14 Decision and this Supplemental Decision on Damages on two weeks' notice to defendants' counsel.